**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                :

A.P., by and through his parents   :
U.P. and M.T., individually and    :
on behalf of a class of those      :
similarly situated,               :      Civil No. 2:23-cv-02644
                                :

               _Plaintiffs_,   :      **CLASS ACTION COMPLAINT**
                                :      **FOR DECLARATORY AND**
vs.                           :      **INJUNCTIVE RELIEF**
                                :

Pennsylvania Department of Education,  :
                                :      July 11, 2023
               _Defendant_.   :
_____  :

**CLASS ACTION COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

This class action challenges the Pennsylvania Department of Education's policy and practice of prematurely cutting off special education services for 21-year-old students in violation of the Individuals with Disabilities Education Act. Plaintiffs, a Pennsylvania student and his parents, allege as follows on their own behalf and on behalf of a class of those similarly situated.

## INTRODUCTION

1.     This is a class action to vindicate the rights of Plaintiffs and the class they seek to represent under the Individuals with Disabilities Education Act ("IDEA").

2.     The purpose of the IDEA is to ensure that all children with disabilities are prepared for "further education, employment, and independent living" after they leave high school. _See_ 20 U.S.C. § 1400(d). Accordingly, pursuant to the IDEA, children with disabilities have a right to receive a free appropriate public education ("FAPE") until they either earn a

1

regular high school diploma or reach the age of 22. *See* 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.102(a)(3). As an integral part of that FAPE, high school students with disabilities are entitled to supports and services "focused on improving the academic and functional achievement of the child . . . to facilitate the child's movement from school to post-school activities, including postsecondary education, vocational education, integrated employment (including supported employment), continuing and adult education, adult services, independent living, or community participation." 34 C.F.R. § 300.43(a)(1).

3.      Contrary to these mandates, the Pennsylvania Department of Education ("PDE") has implemented a policy that prematurely terminates high school students' right to receive a FAPE by aging students out of special education services at the end of the school term in which a student turn 21. *See* Commonwealth of Pennsylvania Department of Education, "Individuals with Disabilities Act Part B, Policies and Procedures under 34 CFR §§ 300.101-300.176" (effective July 1, 2018) at § 300.101 (hereinafter "Age-Out Policy").

4.      PDE's Age-Out Policy unlawfully deprives students with disabilities of up to a year of a FAPE at a critical juncture of their lives, denying them essential services such as job readiness training, functional math and literacy instruction, and the acquisition of daily living skills such as using public transportation, shopping for groceries, or managing a home. The Age-Out Policy also harms the very students most in need of these services: students with significant disabilities who are more likely to remain in school instead of earning a regular high school diploma, and who will require coordinated, comprehensive supports to successfully transition to adult life.

5.      Plaintiff A.P. is one of these individuals. He is a 19-year-old high school student in the Lower Merion School District with an intellectual disability, Autism Spectrum Disorder,

Other Health Impairment, and Speech and Language Impairment. A.P. requires intensive supports and services to make academic and functional progress, and he will not graduate from high school with a regular high school diploma. A.P. is entitled to a FAPE until February 10, 2026, when he turns 22. But as a result of PDE's Age-Out Policy, his special education and services will be terminated at the end of the 2024-2025 school year, depriving A.P. of over half a year of the supports to which he is entitled under the IDEA.

6.      Plaintiff A.P. is representative of the many students with disabilities in Pennsylvania who are still eligible for FAPE but whose federal rights are cut short every year by PDE's Age-Out Policy.

7.      As set forth below, the Age-Out Policy should be declared invalid and enjoined as directly contrary to federal law. Accordingly, Plaintiff A.P., by and through his parents U.P. and M.T., on their own behalf and on behalf of the class they seek to represent, bring suit under the IDEA for injunctive and declaratory relief and attorneys' fees and costs.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Plaintiffs' claims and the parties pursuant to 28 U.S.C. § 1331 because such claims arise under federal law, specifically the IDEA. 20 U.S.C. § 1400 *et seq.*

9.      This Court has jurisdiction to award declaratory and preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1319(b) because the events and omissions giving rise to the Plaintiffs' claims occurred in the district.

11.     Exhaustion of administrative remedies is not required before this Court may exercise jurisdiction over Plaintiffs' claims. As the Third Circuit has recognized, exhaustion is not required "where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; [or] (4) exhaustion would cause severe or irreparable harm." *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 185 (3d Cir. 2021) (internal citation omitted). The Third Circuit has also recognized that exhaustion is not required when plaintiffs allege "systemic legal deficiencies" and request "system-wide relief that cannot be provided (or even addressed) through the administrative process." *Id.* (internal citations omitted). Here, PDE has adopted a policy that is contrary to the IDEA, which raises a purely legal issue. Moreover, exhaustion would be futile because the administrative agency cannot grant the class-wide injunctive and equitable relief sought. Finally, PDE's failure to provide a FAPE to all special education students in the Commonwealth until they reach age 22 is a systemic deficiency that requires a court remedy.

**THE PARTIES**

12.     Plaintiff A.P. is a 19-year-old student enrolled in Lower Merion High School in the Lower Merion School District. He resides in Villanova, Pennsylvania with his parents and sibling.

13.     Plaintiff A.P. qualifies as a child with a disability under the IDEA, 34 C.F.R. § 300.8(a)(1), and accordingly is entitled to a FAPE.

14.     Plaintiff A.P. sues through his parents and legal guardians, U.P. and M.T.

15.     Plaintiff A.P. sues under a pseudonym because the record in this action may disclose specific information about his disabilities, information to which he has the right to

privacy. Parent Plaintiffs U.P. and M.T. sue under pseudonyms because disclosure of their identities would necessarily disclose the identity of Plaintiff A.P.

16.    Defendant Pennsylvania Department of Education (PDE) is the executive department of the Commonwealth of Pennsylvania charged with overseeing publicly funded K-12 education, special education services and programs, and adult education programs. *See* 71 P.S. § 351 *et seq.*; 22 Pa. Code §14.102(a)(4); 24 P.S. § 6401 *et seq.*

17.    Under the IDEA and its implementing regulations, PDE is the state educational agency responsible for ensuring that the requirements of the IDEA are met. *See* 20 U.S.C. § 1412(a)(11). As a condition of federal funding, PDE is required to "submit[] a plan that provides assurances to the [U.S.] Secretary [of Education] that the State has in effect policies and procedures to ensure that the State meets the conditions in [34 CFR] §§ 300.101 through 300.176." 34 CFR § 300.100; *see also* 20 U.S.C. § 1412(a).

18.    To satisfy this obligation, PDE has implemented the "Individuals with Disabilities Act Part B, Policies and Procedures under 34 CFR §§ 300.101-300.176" (effective July 1, 2018) (hereinafter "IDEA Policies and Procedures"), attached as Exhibit 1.[1] PDE's IDEA Policies and Procedures state that "[t]his product, in part, fulfills the requirements at 34 CFR Part 300, Subpart B – State Eligibility" and set forth "[t]he State Plan describing [PDE's] policies and procedures for §§300.101 through 300.175." IDEA Policies and Procedures at 1-2. The IDEA Policies and Procedures include the Age-Out Policy challenged here. *Id.* at § 300.101.

19.    PDE is responsible for ensuring that any State rules, regulations, and policies conform to the purposes of the IDEA. *See* 20 U.S.C. § 1407.

---

[1] Available at https://www.education.pa.gov/Documents/K-12/Special%20Education/IDEIA-IDEA/IDEA-B%20Policies%20and%20Procedures%202018.pdf.

## FACTUAL ALLEGATIONS

**A. The IDEA entitles Pennsylvania students with disabilities to a FAPE until they turn 22 years old.**

20.    The IDEA mandates that a "free and appropriate public education" shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a)(1)(A).

21.    The obligation to provide a FAPE applies until a child graduates from high school with a regular high school diploma or turns 22. *See* 34 C.F.R. § 300.102(a)(3)(i)-(ii); *see also K.L. v. Rhode Island Bd. of Educ.*, 907 F.3d 639, 641 (1st Cir. 2018) (the IDEA eligibility continues until a child with disability turns 22); *L.A. Unified Sch. Dist. v. Garcia*, 699 F. 3d 956, 959 (9th Cir. 2012) (eligible children should receive services under the IDEA "until they turn [22]") ; *St. Johnsbury Acad. v. D.H.*, 240 F. 3d 163, 168 (2d Cir. 2001) ("the relevant period. . . ends on the last day of [the child's] 21st year (which culminates in his 22nd birthday)."); *Lillbask ex rel. Mauclaire v. State of Conn. Dep't. of Educ.*, 397 F.3d 77, 86 n.4 (2d Cir. 2005) ("A child remains eligible for a [FAPE] under IDEA until his 22nd birthday.").

22.    States are only exempt from providing a FAPE to eligible students ages 18 through 21 if doing so "would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges . . .." 20 U.S.C. § 1412(a)(1)(B). In other words, if the state provides free public education to any children in the 18-21 age group, it must also provide a FAPE to children with disabilities through their 21st year.

23.    There is no inconsistent state law or practice in Pennsylvania. Although state law provides that "a child who attains the age of twenty-one (21) years during the school term and who has not graduated from high school may continue to attend the public schools in his district free of charge until the end of the school term," 24 P.S. § 13-1301, state law also provides free

public education to students regardless of age through its adult education programs. *See* 24 P.S. § 6401 *et seq*. These programs permit students to continue pursuing the equivalent of a high school education without an upper age limit.

24.     Multiple federal appellate courts have concluded that pursuant to Section 1412(a)(1)(B) of the IDEA, a state "cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages," including through its adult education programs. *E.R.K v. State of Hawaii Dep't of Educ*., 728 F.3d 982, 987 (9th Cir. 2013); *see also K.L. v. Rhode Island Bd. of Ed*., 907 F.3d 639, 642 (1st Cir. 2018); *A.R. v. Conn. State Bd. of Ed.*, 5 F.4th 155, 167 (2d Cir. 2021); *accord Montgomery Cnty. Intermediate Unit No. 23 v. K.S. by & through K.S.*, 546 F.Supp.3d 385, 396 (E.D. Pa. 2021) (concluding that Section 1412(a)(1)(B) stands for the proposition that "the state must provide disabled children the same benefits it provides to non-disabled children in the same age group.").

**B. Pennsylvania provides free public education to students without age limit through its adult education programs.**

25.     A "free public education" is defined by three characteristics: 1) it is provided at public expense; 2) with the objective of providing elementary or secondary education; 3) under public direction and supervision. *See E.R.K.*, 728 F.3d at 987; *K.L.*, 907 F.3d at 642; *A.R.*, 5 F.4th at 164.

26.     Pennsylvania's adult education system, which provides state-funded elementary and secondary instruction programs administered by PDE, constitutes "free public education."

27.     Pursuant to the Pennsylvania Adult and Family Literacy Education Act 143 ("Act 143"), 24 Pa. Stat. Ann. § 6401 *et seq*., the General Assembly appropriates funds annually to

maintain a state grant program for adult and family literacy education programs. *See id.* at §
6404(a).

28.    In 2022, $12,475,000 in state funding was allocated for these programs. *See* Pa.
Off. of the Budget, *2022-23 Commonwealth Enacted Budget Line Item Appropriations* at 3.[2]

29.    This funding is used to provide grants to programs that offer, *inter alia*, "[a]dult
literacy education programs for eligible adults," 24 Pa. Stat. Ann. § 6404(a)(1), which is defined
as "[a]n educational program designed to provide basic skills training in mathematics, reading and
English, including English as a second language," *id.* at § 6403. Up to 20% of the annual
appropriation under the Act can be used for "programs of equivalency for certificate of graduation
from a secondary school." *Id.* at § 6405(c).

30.    An "eligible adult" under the Act is defined as a person who "(1) Is at least 17
years of age[,] (2) Is a resident of this Commonwealth[, and] (3) Is not currently enrolled in
public or private secondary or postsecondary school." *Id.* According to PDE data, on average
there are approximately three hundred 21-year-old students enrolled in the Commonwealth's
adult education programs each year.

31.    The educational objective of several of Pennsylvania's adult education programs
is to provide elementary and secondary education skills. For example, Pennsylvania offers Adult
Basic Education, which provides "instruction in reading, writing, and math at grade-level
equivalents through eighth grade," as well as "Adult Secondary Education" ("ASE"), which
provides "instruction in reading, writing and math at the 9-12 grade equivalents." *See Programs*

---

[2] Available at
https://www.budget.pa.gov/Publications%20and%20Reports/CommonwealthBudget/Documents/
2022-23%20Enacted%20Budget/2022-
23%20Enacted%20Budget%20Line%20Item%20Appropriations.pdf.

*and Services*, Pa. Dep't of Educ..[3] ASE also includes activities to support individuals "to transition to postsecondary education." *Id*. In addition, the state offers High School Equivalency Test Preparation to adults who do not have a high school diploma. *Id*.

32.     These programs are offered at no cost to students. *See, e.g.*, Lifelong Learning Choices program website (providing "free basic education classes" to adults);[4] Literacy Pittsburgh Program website (offering "free educational programs for adults and families in Allegheny County and Beaver County");[5] Keystone Opportunity Center website (noting that "HSE [high school equivalency] instruction is free and part of our Title II, Pennsylvania Department of Education funded program.").[6]

33.     PDE plays a central role in implementing Pennsylvania's adult education programs. 24 P.S. § 6404(b). Pursuant to Act 143, the Secretary of PDE is directed to evaluate program proposals, *id.* at § 6404(c), monitor the funded programs, *id.* at § 6409(a), and produce an annual report to the General Assembly "describ[ing] State-administered adult and family literacy education activities," "address[ing] the responsibilities of State and local agencies," and "describ[ing] measures taken to provide a coordinated and comprehensive service delivery system." *Id.* at § 6409(b). PDE also imposes performance standards for adult education providers and requires them to adhere to an extensive set of guidelines and policies. *See* Pa. Dep't of Educ., *Adult Education and Family Literacy Guidelines Program Year 2022-2023*.[7]

---

[3] Available at https://www.education.pa.gov/Postsecondary-Adult/Adult%20and%20Family%20Literacy%20Education/Pages/Programs-and-Services.aspx (last visited June 20, 2023).

[4] Available at https://www.learningchoicesinfo.org/ (last visited June 20, 2023).

[5] Available at https://www.literacypittsburgh.org/ (last visited June 20, 2023).

[6] Available at https://keystoneopportunity.org/education/highschool/ (last visited June 20, 2023).

[7] Available at https://www.education.pa.gov/Documents/Postsecondary-Adult/Adult%20Basic%20and%20Family%20Literacy%20Education/AdminDocs/Guidelines/A

**C.  PDE's Age-Out Policy prematurely terminates the special education services of Plaintiffs and similarly situated students.**

34.     Because PDE provides free public education to students 18 through 21 via its adult education programs, it is obligated under the IDEA to make a FAPE available to students with disabilities in that age range as well, and thus to provide special education and services to eligible students until their 22nd birthdays. *See* 20 U.S.C. § 1412(a)(1)(B).

35.     Contrary to this clear requirement, however, PDE has instituted a policy and practice of terminating students' FAPE eligibility at the end of the school term in which students turn 21.

36.     PDE's policy is set forth in its IDEA Policies and Procedures, which reads, in relevant part:

> The Commonwealth of Pennsylvania (PA) ensures that all children with disabilities aged 3 years to 21 years of age residing in PA have the right to a free appropriate public education (FAPE), including children with disabilities who have been suspended or expelled from school. There is an age-related exception under the provision of 34 CFR §300.102(b). Under the School Code (24 P.S. §13-1301)… Every child, being a resident of any school district, between the ages of six and twenty-one (21) years, may attend the public schools in his district, subject to the provisions of this act. Notwithstanding any other provision of law to the contrary, a child who attains the age of twenty-one (21) years during the school term and who has not graduated from high school may continue to attend the public schools in his district free of charge until the end of the school term. **Therefore, PA is required to make FAPE available to a child with a disability to the end of the school term in which the student reaches his/her 21st birthday.**

*See* IDEA Policies and Procedures at § 300.101 (emphasis added).

---

dult%20Education%20and%20Family%20Literacy%20Guidelines%20PY%202022-23.pdf.

37.    Pursuant to PDE's Age-Out Policy, 21-year-old students with disabilities are deprived of as much as a year of the critical supports and services to which they are entitled under the IDEA.

38.    Plaintiff A.P. is one of the many students whose right to FAPE will be or has been prematurely terminated by PDE's Age-Out Policy each year.

39.    A.P. is a 19-year-old high school student who attends Lower Merion High School in the Lower Merion School District. As a result of febrile infection-related epilepsy syndrome ("FIRES"), A.P. has an intellectual disability, Autism Spectrum Disorder, Other Health Impairment, and Speech and Language Impairment. Pursuant to his IEP, he is supported by personal care assistants and receives services including speech and language therapy, occupational therapy, physical therapy, and transition services to help him develop independent living and workplace readiness skills.

40.    A.P. will turn 21 on February 10, 2025. Accordingly, pursuant to PDE's Age-Out Policy, A.P.'s special education services will be terminated at the end of the 2024-2025 school year.

41.    However, A.P. will not graduate from Lower Merion High School with a regular high school diploma and is therefore entitled to receive a FAPE until February 10, 2026, his 22nd birthday.

42.    A.P. would meaningfully benefit from continued special education and related services until he turns 22. As a result of his disabilities, A.P. has significant needs and the supports he receives are vital to ensuring that he can continue to increase his functioning and make progress toward the self-sufficiency he needs to live an independent life after high school.

## CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this case as a proposed class action pursuant to Federal Rules of

Civil Procedure 23(b)(2) on behalf of themselves and a proposed class defined as follows:

> All children with disabilities who receive special education and
> related services pursuant to an IEP in the Commonwealth of
> Pennsylvania; who are eligible to receive a FAPE until their 22nd
> birthdays; and whose special education and related services are
> terminated at the end of the school term in which they turn 21
> pursuant to PDE's Age-Out Policy.

44.     The class period commences from the time of the filing of this Complaint and

continues so long as the unlawful Age-Out Policy remains in force. Plaintiffs may amend the

proposed definition of the Class, in accordance with the Federal Rules of Civil Procedure, based

on legal development or facts learned during discovery.

45.     The members of the Class are so numerous that joinder of all Class members is

impracticable. There are hundreds of students with disabilities ages 18-21 who are receiving or

will receive a FAPE under the IDEA and who, but for PDE's Age-Out Policy, would continue to

be eligible for special education and related services until their 22nd birthday. Although Plaintiffs

do not know the precise number of Class members, on average, each year there are over 17,000

students with disabilities between the ages of 18-21 receiving special education and related

services in the Commonwealth, approximately 300 of whom are 21. *See* Pa. Dep't of Educ.,

Special Educ. Data Reporting, *Special Education Statistical Summaries* for 2021-2022, 2020-

2021, 2019-2020, 2018-2019, 2017-2018, Tbl. 10.[8] In 2021-22, 723 students aged 21 were still

enrolled in school. Pa. Dep't of Educ., Special Educ. Data Reporting, *Special Education*

---

[8] Available at https://penndata.hbg.psu.edu/Public-Reporting/Statistical-Summary.

*Statistical Summary 2021-2022*, Tbl.10.[9] This number is even larger when future students are taken into account, and in any event is greater than could be feasibly addressed through joinder.

46.    There are questions of law and fact common to Class members that predominate over any questions affecting only individual members, including:

        a.  whether the IDEA entitles children with disabilities to a FAPE until their 22nd birthday;

        b.  whether the Commonwealth of Pennsylvania is legally obligated to provide a FAPE to eligible students until their 22nd birthdays;

        c.  whether PDE's Age-Out Policy violates the IDEA by terminating eligible students' FAPE at the end of the school term in which a student turns 21.

47.    Plaintiff A.P. is a member of the Class he seeks to represent and has claims and injuries that are typical of the claims and injuries of the Class members. A.P. is a student with a disability entitled to a FAPE whose special education and related services will be terminated at the end of the school term in which he turns 21 as a result of PDE's Age-Out Policy.

48.    Plaintiff A.P., by and through his parents Plaintiffs U.P. and M.T., will fairly and adequately represent and protect the interests of the Class members because their interests coincide with, and are not antagonistic to, the interests of the Class members they seek to represent. Plaintiffs have retained counsel who are competent and experienced in special education law, federal civil rights litigation, and class actions, including systemic litigation under the IDEA. There is no conflict between Plaintiffs and the other members of the Class.

---

[9]Available at
https://penndata.hbg.psu.edu/Portals/66/documents/PennDataBooks/Statistical_Summary_2021-2022.pdf.

49.    Certification of the Plaintiff Class is appropriate pursuant to Federal Rule of Civil Procedure Rule 23(b)(2) because PDE has acted or refused to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate for the Class as a whole.

## CLAIM FOR RELIEF (VIOLATION OF THE IDEA)

50.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth.

51.    Under the IDEA, PDE is obligated to provide a FAPE to all children with disabilities who have not graduated from high school with a regular high school diploma until such individuals reach their 22nd birthday, unless to do so would be "inconsistent with State law or practice…respecting the provision of public education to children in that age range." 20 U.S.C. § 1412(a)(1)(B).

52.    Providing students with disabilities in Pennsylvania a FAPE until age 22 is not inconsistent with any Pennsylvania law or practice. Pennsylvania, as a matter of both law and practice, provides free public education to individuals without age limit through its adult education programs, which are supervised by PDE, paid for by public funds, offered free of charge to students, and include programs that facilitate the attainment of a high school diploma or equivalency certificate.

53.    Plaintiff A.P. and the members of Plaintiff Class are entitled to a FAPE until they reach the age of 22, and PDE's refusal to provide Plaintiff A.P. and the members of the Plaintiff Class a FAPE violates the IDEA.

54.    PDE has also violated 20 U.S.C. § 1407 by failing to ensure that its policies conform to the IDEA.

55.    PDE has also violated 20 U.S.C. §1412(11) by failing to ensure that the LEAs under PDE's supervision and control are meeting the requirements of 20 U.S.C. § 1412(a)(1)(B).

**WHEREFORE,** Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court:

a) Assert jurisdiction over this matter and certify the Class as defined herein;

b) Declare that pursuant to the IDEA, the Commonwealth of Pennsylvania is obligated to provide a FAPE to eligible children with disabilities until their 22nd birthdays;

c) Declare PDE's Age-Out Policy invalid and illegal as violative of the IDEA to the extent that it terminates the FAPE of eligible children with disabilities before their 22nd birthdays;

d) Enter a permanent injunction enjoining PDE from implementing and enforcing the Age-Out Policy against Plaintiffs, Class members, and any similarly situated children with disabilities;

e) Enter a permanent injunction compelling PDE to rescind the Age-Out Policy and establish, publish, implement, and enforce a new policy that requires the Commonwealth of Pennsylvania and its LEAs to provide a FAPE to eligible children with disabilities until those children reach their 22nd birthdays;

f) Award Plaintiffs their reasonable attorney's fees, costs, and expenses under any applicable law; and

g) Grant such other and further relief as this Court deems just and proper.

Dated: July 11, 2023                          Respectfully submitted,

By: _/s/  David J. Berney_____        By: _/s/  Caroline E. Ramsey_____
David J. Berney (Pa. Bar No. 67882)           Mary M. McKenzie (Pa. Bar No. 47434)
Jennifer Y. Sang (Pa. Bar No. 310617)         Claudia De Palma (Pa. Bar No. 320136)
BERNEY & SANG                                 Sarah K. Kang (Pa. Bar No. 207432)
8 Penn Center                                 Caroline E. Ramsey (Pa. Bar No. 329160)
1628 JFK Blvd., Suite 1000                    PUBLIC INTEREST LAW CENTER
Philadelphia, PA 19103                        2 Penn Center
Telephone: (215) 564-1030                     1500 JFK Blvd., Suite 802
                                              Philadelphia, PA 19102
                                              Telephone: (215) 627-7100

                                              *Attorneys for Plaintiffs*

# EXHIBIT 1

# COMMONWEALTH OF PENNSYLVANIA

# DEPARTMENT OF EDUCATION

# INDIVIDUALS WITH DISABLTIES EDUCATION ACT

# PART B

# POLICIES AND PROCEDURES

# UNDER

# 34 CFR §§ 300.101—300.176

# July 1, 2018

# COMMOMWEALTH OF PENNSYLVANIA MODEL LOCAL EDUCATIONAL AGENCY (LEA) POLICIES AND PROCEDURES

## PURPOSE

Under the regulatory provisions of the Individuals with Disabilities Education Act, Part B (IDEA-B), to be eligible for funds the Local Educational Agency (LEA) must, among many things, demonstrate to the satisfaction of the State Education Agency (SEA) that it meets the conditions in §§ 300.101 through 300.163, and §§ 300.165—300.174.  The conditions under § 300.220 require the LEAs to have in effect policies, procedures, and programs that are consistent with the State policies and procedures established under §§ 300.101—300.163, and §§ 300.165—300.174.  The Board approved LEA Policies and Procedures must be on file with the Department of Education.

This current model of LEA Policies and Procedures is formatted to facilitate future modifications of the policies and procedures.  Modifications to the IDEA Policies and Procedures may be necessary to ensure compliance with Part 300, if:  (1) The provisions of the IDEA or the implementing regulations are amended; (2) There is a new interpretation of the IDEA by Federal or State courts; or (3) There is an official finding of noncompliance with Federal or State law or regulations.

Acceptance of this product, in part, fulfills the requirements at 34 CFR § 300.200 in meeting the conditions under *Local Educational Agency Eligibility*.

# § 300.101 – Free appropriate public education (FAPE)

The Commonwealth of Pennsylvania (PA) ensures that all children with disabilities aged 3 years to 21 years of age residing in PA have the right to a free appropriate public education (FAPE), including children with disabilities who have been suspended or expelled from school. There is an age-related exception under the provision of 34 CFR § 300.102(b). Under the School Code (24 P.S. § 13-1301)… Every child, being a resident of any school district, between the ages of six and twenty-one (21) years, may attend the public schools in his district, subject to the provisions of this act.  Notwithstanding any other provision of law to the contrary, a child who attains the age of twenty-one (21) years during the school term and who has not graduated from high school may continue to attend the public schools in his district free of charge until the end of the school term. Therefore, PA is required to make FAPE available to a child with a disability to the end of the school term in which the student reaches his/her 21st birthday.

It is the policy of PDE that a free appropriate public education is available to all children residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school, as provided for in § 300.530(d).  FAPE is made available to each eligible child residing in the State beginning no later than the child's third birthday.  Additionally, an IEP or an IFSP is in effect for the child by that date, in accordance with § 300.323(b). Moreover, if a child's third birthday occurs during the summer, the child's IEP Team shall determine the date when services under the IEP or IFSP will begin.  The determination that a child is eligible under IDEA-B, is made on an individual basis by the group responsible within the child's LEA for making eligibility determinations.

It is PDE policy that public agencies must adhere to state and federal regulations regarding disciplinary removals. Notwithstanding the requirements incorporated by Chapter 14 and Chapter 711 which adopt by reference 34 CFR §§ 300.530—300.537 (relating to authority of school personnel; and change of placement because of disciplinary removals), a disciplinary exclusion of a student with a disability for more than 15 cumulative school days in a school year will be considered a pattern so as to be deemed a change in educational placement. A removal from school is a change of placement for a student who is identified with an intellectual disability, except if the student's actions are consistent with 34 CFR §§ 300.530—300.535 (relating to authority of school personnel; determination of setting; appeal; placement during appeals; protections for children not determined eligible for special education and related services; referral to and action by law enforcement; and judicial authorities).

PDE policy ensures FAPE is available to any child with a disability who needs special education and related services, even though the child has not failed or been retained in a course or grade, and is advancing from grade to grade.

## § 300.101 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(x) and (xxxii)
22 Pa. Code § 711.3(a)(iii)(ix) and (xxix)

# § 300.102 – Limitation – exception to FAPE for certain ages.

As described under § 300.102, there are no exceptions for age range of 3 through 21, unless the following exist:

It is PDE policy with respect to children aged 18 through 21 that FAPE is not required for students with disabilities who, in the last educational placement prior to their incarceration in an adult correctional facility were not determined eligible for special education and related services and did not have an IEP.

However, this exception does not apply to children with disabilities, aged 18 through 21, who had been identified as a child with a disability and had received services in accordance with an IEP, but who left school prior to their incarceration.  Additionally, this exception is not applicable if the student did not have an IEP in their last educational setting and had been identified as a child with a disability.

This exception does not apply to children who have graduated from high school but have not been awarded a regular high school diploma. The term *regular high school diploma* does not include an alternative degree that is not fully aligned with the State's academic standards, such as a certificate or a general educational development credential (GED).  If a child with disabilities has graduated from high school with a regular high school diploma, then a written prior notice in accordance with § 300.503 is required because graduation from high school with a regular high school diploma constitutes a change in placement.

## § 300.102 Authority and/or Responsibility
22 Pa. Code § 14.102(2)(x)
22 Pa. Code § 711.3(a)(ix)

## § 300.103 – FAPE – methods and payments.

PDE policy ensures that there is no delay, as a result of determining the funding sources, for the placement of any child with a disability in the Least Restrictive Environment, including where necessary for the child to receive FAPE, including residential facilities.  Timely placements are not relieved even where there is valid obligation for funding the placement by an insurer or similar third party.  The no delay provision includes no waiver of the time while the payment source is being determined.

## § 300.103 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.4

## § 300.104 – Residential placement.

PDE ensures that placement in a public or private residential program if necessary to provide special education and related services is at no cost to the parents of
the child.

## § 300.104 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(x) and (xi)
22 Pa. Code § 711.3(b)(ix) and (x)

# § 300.105 – Assistive technology.

PDE policy ensures that assistive technology devices, or assistive technology services, or both, as defined under § 300.5 and § 300.6, are made available to a child with disabilities if determined on a case-by-case basis by the child's IEP Team, necessary to provide the child access to FAPE.  If necessary to ensure the child's needs for devices or services to access FAPE are met, school-purchased assistive technology devices in the child's home or other setting is required as determined by the IEP Team.

## § 300.105 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(i), (xi), and (xxvii)
22 Pa. Code § 711.3(b)(i), (x), and (xxiv)

# § 300.106 – Extended school year services.

In addition to the requirements at 34 CFR § 300.106 (relating to extended school year services) adopted by reference, the public agency serving children under Chapter 14 shall use the following factors for determining whether a student with disabilities requires ESY as part of the provision of FAPE at each IEP meeting and, if so, make subsequent determinations about the ESY services to be provided.

*In considering whether a student is eligible for ESY services, the IEP team shall consider the following factors, however, no single factor will be considered determinative:*

*(i)   Regression—whether the student reverts to a lower level of functioning as evidenced by a measurable decrease in skills or behaviors which occurs as a result of an interruption in educational programming.*

*(ii)   Recoupment—whether the student has the capacity to recover the skills or behavior patterns in which regression occurred to a level demonstrated prior to the interruption of educational programming.*

*(iii)   Whether the student's difficulties with regression and recoupment make it unlikely that the student will maintain the skills and behaviors relevant to IEP goals and objectives.*

*(iv)   The extent to which the student has mastered and consolidated an important skill or behavior at the point when educational programming would be interrupted.*

*(v)   The extent to which a skill or behavior is particularly crucial for the student to meet the IEP goals of self-sufficiency and independence from caretakers.*

*(vi)   The extent to which successive interruptions in educational programming result in a student's withdrawal from the learning process.*

*(vii)   Whether the student's disability is severe, such as autism/pervasive developmental disorder, serious emotional disturbance, severe intellectual disability, degenerative impairments with mental involvement and severe multiple disabilities.*

*Other reliable sources of information regarding a student's educational needs, propensity to progress, recoupment potential and year-to-year progress may include the following; progress on goals in consecutive IEPs, progress reports maintained by educators, therapists and others having direct contact with the student before and after interruptions in the education program, reports by parents of negative changes in adaptive behaviors or in other skill areas, medical or other agency reports indicating degenerative-type difficulties, which become exacerbated during breaks in educational services, observations and opinions by educators, parents and others, and results of tests, including criterion-referenced tests, curriculum-based assessments, ecological life skills assessments and other equivalent measures.*

*The need for ESY services will not be based on any of the following; the desire or need for day care or respite care services, the desire or need for a summer recreation program, the desire or need for other programs or services that while they may provide educational benefit, are not required to ensure the provision of a free appropriate public education.*

*Students with severe disabilities such as autism/pervasive developmental disorder, serious emotional disturbance; severe intellectual disability; degenerative impairments with mental involvement; and severe multiple disabilities require expeditious determinations of eligibility for extended school year services to be provided as follows:*

*(1) Parents of students with severe disabilities shall be notified by the public agency of the annual review meeting to ensure their participation.*

*(2) The IEP review meeting must occur no later than February 28 of each school year for students with severe disabilities.*

*(3) The Notice of Recommended Educational Placement (NOREP) shall be issued to the parent no later than March 31 of the school year for students with severe disabilities.*

*(4) If a student with a severe disability transfers into a public agency after the dates in paragraphs (2) and (3), and the ESY eligibility decision has not been made, the eligibility and program content must be determined at the IEP meeting.*

*Public agencies shall consider the eligibility for ESY services of all students with disabilities at the IEP meeting. Consideration of the need for ESY services shall occur at the IEP team meeting to be convened annually, or more frequently if conditions warrant. Consideration means that ESY services are raised and discussed at the IEP team meeting. In making a determination that a student is eligible for ESY services, the IEP team shall rely on criteria in this section and applicable judicial decisions. ESY determinations for students other than the group of students identified as students with severe disabilities are not subject to the time line of February 28 or March 31. However, the ESY determinations shall still be made in a timely manner. If the parents disagree with the public agencies' recommendation on ESY, the parents will be afforded an expedited due process hearing.*

## § 300.106 Authority and/or Responsibility

22 Pa. Code § 14.102(b)(xi)
22 Pa. Code § 14.132
22 Pa. Code § 711.3(b)(x)
22 Pa. Code § 711.44

## § 300.107 – Nonacademic services.

As determined appropriate and necessary by the child's IEP Team, children with disabilities must be provided supplementary aids and services to provide nonacademic and extracurricular services and activities in the manner necessary to afford an equal opportunity for participation in the services and activities.

Nonacademic and extracurricular services and activities may include counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the public agency, referrals to agencies that provide assistance to individuals with disabilities, and employment of students, including both employment by the public agency and assistance in making outside employment available.

### § 300.107 Authority and/or Responsibility
22 Pa. Code § 14.102 (b)(xi)(xxvii)
22 Pa. Code § 711.3 (b)(x)(xxiv)

## § 300.108 – Physical education.

It is PDE policy that physical education services, specially designed if necessary, are made available to every child with a disability receiving FAPE.  Each child with a disability is afforded the opportunity to participate in the regular physical education program available to nondisabled children unless the child is enrolled full time in a separate facility or needs specially designed physical education, as prescribed in the child's IEP.

If specially designed physical education is prescribed in a child's IEP, the child must be provided the services directly or arranged through other public or private programs to provide the services.

The child with a disability enrolled in a separate facility must receive appropriate physical education services.

### § 300.108 Authority and/or Responsibility
22 Pa. Code § 14.102 (b)(xi)
22 Pa. Code § 711.3 (b)(i)

## § 300.109 – Full educational opportunity goal (FEOG).

Regarding full educational opportunity goal, the General Assembly of Pennsylvania has enacted legislation that provides for an entitlement to services for children with disabilities from birth onward, consistent with the terms of IDEA.  Services and programs for Infant and Toddlers are provided via DHS under Act 212 of 1990.   For children age 3 onward, FEOG is pursued by the State Board of Education's adoption of regulations which provides for PDE's general supervision of services and programs and the regulations for charter schools and cyber charter schools.

Full implementation of these requirements on a statewide basis continues through PDE's Bureau of Special Education and the Bureau of Early Intervention Services management of its resources including implementation of its grant under IDEA-B, through its LEA Application processes,

monitoring systems, complaint management systems, impartial due process systems, and technical assistance and support systems.

Regarding Pennsylvania's detailed timetable to reach the goal of providing full educational opportunity to all children with disabilities, the Commonwealth affirms the goal of providing full educational opportunity to all children with disabilities ages birth through 21, by the year 2020.

## § 300.109 Authority and/or Responsibility
11 P.S. §§ 875-101—875-503
24 P.S. § 13-1372(1)
24 P.S. § 17-1732A(c)(1) & §17-1751-A


# § 300.110 – Program options.

It is PDE policy that children with disabilities have available to them the variety of educational programs and services available to nondisabled children in the area served by the agency, including art, music, industrial arts, family and consumer science education, computer education, and vocational education.

## § 300.110 Authority and/or Responsibility
22 Pa. Code § 14.102 (a)(4)
22 Pa. Code § 711.3 (a)
22 Pa. Code § 711.4


# § 300.111 – Child find.

It is PDE's policy that all children with disabilities residing in the State, including children with disabilities attending private schools, regardless of the severity of their disability, and who are in need of special education and related services, are identified, located, andevaluated. All public agencies in the State who provide special education and related services report annually to the State, through the State wide data system which children are being served and what services are being provided.  This method applies to all children with disabilities, including highly mobile children (such as migrant and homeless children), and children who are suspected of being eligible under IDEA, even though they are advancing from grade to grade.

The procedures are addressed in the State Board of Education's regulations where school districts and charter schools  perform child find, screening and evaluation for all children, as prescribed at 22 Pa. Code §§ 14.121—14.123 and 22 Pa Code, § 711.21, §711.23, and § 711.24.  A practical method has been developed and implemented to determine which children are currently receiving needed special education and related services. Under Chapter 14, student information regarding identification, disability categories, and special education and related services provided is reported in the school districts special education plan and data reports submitted to PDE in accordance with 22 Pa. Code § 14.104.  With regard to children receiving services under Chapter 711, each charter school's or cyber charter school's written policy must include:  (1) public awareness activities sufficient to inform parents of children applying to or enrolled in the charter school or cyber charter school of available special education services and programs and how to request those services and programs, and

(2) systematic screening activities that lead to the identification, location, and evaluation of children with disabilities enrolled in the charter school or cyber charter school.

In addition to the requirements at 34 CFR § 300.111 (relating to child find), Intermediate Units are responsible for child find activities necessary to provide equitable services consistent with 34 CFR §§ 300.130—300.144, regarding children with disabilities enrolled by their parents in private schools.

The Pennsylvania Department of Education is responsible for all child find activities for children from ages 3 to 21. The Pennsylvania Department of Human Services (DHS) is responsible for child find activities for children from birth through age 2. DHS performs child find activities for Infant and Toddlers based on Act 212 of 1990, Section 302 (11 P.S. §875-303), and Chapter 4226 Early Intervention Services, Section 4226.24, in accordance with policies and procedures consistent with IDEA. PDE recognizes and accepts that such practice under the law (Act 212 of 1990) does not diminish PDE's responsibility to ensure compliance with the requirements of 34 CFR §300.111.

## § 300.111 Authority and/or Responsibility
22 Pa. Code §§ 14.121—14.123
22 Pa. Code § 711.21, § 711.23 and § 711.24

## § 300.112 – Individualized education programs (IEP).

It is PDE policy that Chapter 14 and 711 by adoption by reference and/or explicit rule adoption therein, meets Federal regulations covering all IEP requirements.

PDE policy supported by PA regulations, do adopt the exception under § 300.112 (referring to § 300.300(b)(3)(ii) (sic)), namely that a public agency does not violate its obligation for IEP or IFSP development and implementation, if the public agency is unable to obtain informed parental consent for the initial provision of services.

PDE policy is supported by enforceable rules under the adoption by reference in Chapters 14 and 711 that a parent has the right to unilaterally withdraw a child with a disability from continued special education and related services. The school entity may not challenge that parent's decision using Part B dispute resolution procedures. If, at any time subsequent to the initial provision of special education and related services, the parent of a child revokes consent in writing for the continued provision of special education and related services the public agency may <u>not</u> continue to provide special education and related services to that child, but must provide prior written notice in accordance with § 300.503 before ceasing the provision of special education and related services.

In addition to the requirements incorporated by reference regarding a public agency serving children under Chapter 14, the IEP of each student with a disability must include:

A description of the type or types of support as defined in this paragraph that the student will receive, the determination of which may not be based on the categories of the child's disability alone. Students may receive more than one type of support as appropriate and as outlined in the IEP and in accordance with this chapter. Special education supports and services may be delivered in the regular classroom setting and other settings as determined by the IEP team. In

determining the educational placement, the IEP team must first consider the regular classroom with the provision of supplementary aids and services before considering the provision of services in other settings.

*(i) Autistic support. Services for students with the disability of autism who require services to address needs primarily in the areas of communication, social skills, or behaviors consistent with those of autism spectrum disorders. The IEP for these students must address needs as identified by the team which may include, as appropriate, the verbal and nonverbal communication needs of the child; social interaction skills and proficiencies; the child's response to sensory experiences and changes in the environment, daily routine and schedules; and, the need for positive behavior supports or behavioral interventions.*

*(ii) Blind-visually impaired support. Services for students with the disability of visual impairment including blindness, who require services to address needs primarily in the areas of accessing print and other visually-presented materials, orientation and mobility, accessing public and private accommodations, or use of assistive technologies designed for individuals with visual impairments or blindness. For students who are blind or visually impaired, the IEP must include a description of the instruction in Braille and the use of Braille unless the IEP team determines, after the evaluation of the child's reading and writing needs, and appropriate reading and writing media, the extent to which Braille will be taught and used for the student's learning materials.*

*(iii) Deaf and hard of hearing support. Services for students with the disability of deafness or hearing impairment, who require services to address needs primarily in the area of reading, communication accessing public and private accommodations or use of assistive technologies designed for individuals with deafness or hearing impairment. For these students, the IEP must include a communication plan to address the language and communication needs, opportunities for direct communications with peers and professional personnel in the child's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the child's language and communication mode; and assistive technology devices and services.*

*(iv) Emotional support. Services for students with a disability who require services primarily in the areas of social or emotional skills development or functional behavior.*

*(v) Learning support. Services for students with a disability who require services primarily in the areas of reading, writing, mathematics, or speaking or listening skills related to academic performance.*

*(vi) Life skills support. Services for students with a disability who require services primarily in the areas of academic, functional, or vocational skills necessary for independent living.*

*(vii) Multiple disabilities support. Services for students with more than one disability the result of which is severe impairment requiring services primarily in the areas of academic, functional or vocational skills necessary for independent living.*

*(viii) Physical support. Services for students with a physical disability who require services primarily in the areas of functional motor skill development, including adaptive physical education or use of assistive technologies designed to provide or facilitate the development of functional motor capacity or skills.*

*(ix) Speech and language support.  Services for students for students with speech and language impairments who require services primarily in the areas of communication or use of assistive technologies designed to provide or facilitate the development of communication capacity or skills.*

*(2) Supplementary aids and services in accordance with 34 CFR § 300.42 (relating to supplementary aids and services).*

*(3) A description of the type or types of support as defined in § 14.105(2) (relating to personnel).*

*(4) The location where the student attends school and whether this is the school the student would attend if the student did not have an IEP.*

*(5) For students who are 14 years of age or older, a transition plan that includes appropriate measurable postsecondary goals related to training, education, employment and, when appropriate, independent living skills.*

*(6) The IEP of each student shall be implemented as soon as possible, but no later than 10 school days after its completion.*

*(7) Every student receiving special education and related services provided for in an IEP developed prior to July 1, 2008, shall continue to receive the special education and related services under that IEP, subject to the terms, limitations and conditions set forth in law.*

In addition to the requirements incorporated by reference with regard to development, review, and revision of IEP, each public agency serving children under Chapter 14 shall designate persons responsible to coordinate transition activities.

In addition to the requirements incorporated by reference with regard to the public agency serving children under Chapter 711, the IEP of each student with a disability must ensure upon enrollment that the child receives special education and related services in conformity with the IEP, either by adopting the existing IEP or by developing a new IEP, and for students who are 14 years of age or older, the IEP shall include a transition plan which includes appropriate measurable postsecondary goals related to training, education, employment and, when appropriate, independent living skills, and  the IEP of each student shall be implemented as soon as possible but no later than 10 school days after its completion.

## § 300.112 Authority and/or Responsibility
22 Pa. Code § 14.102 (b)(xvii)
22 Pa. Code § 14.131
22 Pa. Code § 711.3 (b)(xxiv)
22 Pa. Code § 711.41

## § 300.113 – Routine checking of hearing aids and external components of surgically implanted medical devices.

It is PDE's policy that hearing aids worn in school by children with hearing impairments, including deafness, are functioning properly.  Additionally, external components of surgically implanted medical devices are monitored to ensure proper functioning.

There is not a public agency responsibility for a child with a surgically implanted medical device who is receiving special education and related services, for the post- surgical maintenance, programming, or replacement of the medical device that has been surgically implanted (or of an external component of the surgically implanted medical device).

### § 300.113 Authority and/or Responsibility
22 Pa. Code § 14.102 (b)(xii)
22 Pa. Code § 711.3 (b)(xii)

## § 300.114 – LRE requirements.

It is PDE's policy that to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled.  *A student may not be determined to require separate education because the child cannot achieve at the same level as classmates who do not have disabilities, if the child can, with the full range of supplementary aids and services, make meaningful progress in the goals included in the student's IEP.  A student may not be removed from or determined to be ineligible for placement in a regular education classroom solely because of the nature or severity of the student's disability, or solely because educating the student in the regular education classroom would necessitate additional cost or for administrative convenience.  Public agencies shall be required to provide access to a full continuum of placement options.*

Generally, the Commonwealth's distribution of State funds for the provision of special education programs and services is based on the aggregated number of children in each school district.  The Commonwealth does not use a funding formula which distributes State funds based on the type of setting where a child is served which results in placements that violate the requirements of Least Restrictive Environment (LRE).

Additionally, from state appropriation, additional funding is provided for PDE to determine, that when extraordinary expense is incurred by a school district, supplemental funding may be provided to the school district to ensure the provision of a free appropriate public education (FAPE) in the Least Restrictive Environment.

Moreover, when it has been determined (consistent with the procedures for all children including evaluation, IEP development, notice, and written consent from the parent) that the educational placement for a student with a disability in the Least Restrictive Environment is an Approved Private School (APS), then a school district may submit application to seek from PDE, financial assistance to help support the LRE of the child.  The purpose of this funding is to defray the cost of the LRE placement, and may or may not be approved by PDE.  Where no funding support is forthcoming from PDE the school district may not delay or deny the educational placement agreed upon including an APS.

Name of LEA

## § 300.114 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xiii)
22 Pa. Code § 14.145
22 Pa. Code § 711.3(b)(xi)


# § 300.115 – Continuum of alternative placements.

Regarding public agencies serving children under Chapter 14, it is PDE's policy that students with disabilities shall be educated in the Least Restrictive Environment. Each school agency serving children under Chapter 14 shall ensure that:

    *(1)  To the maximum extent appropriate,  and as provided in the IEP, the student with a disability is educated with non-disabled peers.*

    *(2)  Special classes, separate  schooling, or other removal of a student with a disability from the regular  education class occurs only when the nature  or severity of the disability is such that education in the regular  education class with the use of appropriate supplementary aids and services cannot be achieved satisfactorily.*

    *(3)  A student may not be determined to require  separate  education because the child cannot achieve at the same level as classmates who do not have disabilities if the child can, with the full range  of supplementary aids and services, make meaningful progress in the goals included in the student's IEP.*

    *(4)  A student may not be removed from or determined to be ineligible for placement in a regular  education classroom solely because of the nature  or severity of the student's disability, or solely because educating the student in the regular education classroom would necessitate additional cost or for administrative convenience.*

    *(5)  School entities shall be required to provide access to a full continuum of placement options.*

## § 300.115 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xiii)
22 Pa. Code § 14.145
22 Pa. Code § 711.3(b)(xii)


# § 300.116 – Placements.

It is PDE's policy that in determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency shall ensure that the placement decision is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and is made in conformity with the LRE provisions of this section. The child's placement: (1) is determined at least annually; (2) is based on the child's IEP; and (3) is as close as possible to the child's home. Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled.  In selecting the LRE, consideration is given to any potential harmful effect on the child or on the quality of services that he or she

needs.  A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general curriculum or solely because educating the student in the regular education classroom would necessitate additional cost or for administrative convenience.

## § 300.116 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xiii)
22 Pa. Code § 14.145
22 Pa. Code § 711.3(b)(xi)

# § 300.117 – Nonacademic settings.

It is PDE's policy in providing or arranging for the provision of nonacademic and extracurricular services and activities, including counseling services, athletics, transportation, health services, recreational activities, special interests groups or clubs sponsored by the public agency, referrals to agencies that provide assistance to individuals with disabilities, and employment of students, including both employment by the public agency and assistance in making outside employment available, each public agency shall ensure that each child with a disability participates with nondisabled children in those services and activities to the maximum extent appropriate to the needs of that child.

The public agency must ensure that each child with a disability has the supplementary aids and services determined by the child's IEP Team to be appropriate and necessary for the child to participate in nonacademic settings.

## § 300.117 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.4

# § 300.118 – Children in public or private institutions.

PA assures students so placed are afforded the right to FAPE in the Least Restrictive Environment through the provisions of the School Code of 1949, P.S. § 13-1306.

## § 300.118 Authority and/or Responsibility
24 P.S. § 13-1306

# § 300.119 – Technical assistance and training activities.

Regarding *Technical assistance and training activities*, it is the policy and practice of PDE to carry out activities to ensure that teachers and administrators in all public agencies are fully informed about their responsibilities for implementing Least Restrictive Environment and are provided with necessary technical assistance and training.

Training and technical assistance is afforded teachers and administrators through a multi- prong approach.  First, State Board's regulations provide enforceable policies and procedures and are

made known through the public participation adoption of rules.  Second, Basic Education Circulars, Penn*Links (non-regulatory documents), or Announcements disseminated to the field provide guidance regarding procedural safeguards and placement in the Least Restrictive Environment.  Both regulations, Basic Education Circulars, Penn*Links, and Announcements are available to teachers and administrators through PDE's web sites.

PDE's monitoring may produce findings whereby procedural safeguards and Least Restrictive Environment implementation falls short of compliance with federal and state regulations and thereby initiate the provision of training and technical assistance to teachers and administrators.

PDE maintains projects through contracted agencies whose mission is to support the efforts of the Bureau of Special Education and the Bureau of Early Intervention Services, including rendering technical assistance and training to teachers and administrators on procedural safeguards and Least Restrictive Environment, consistent with the 34 CFR Part 300 and the State Board regulations pertaining to Special Education.  These agency's mission includes building capacity of the local educational agency to provide appropriate services to students who receive special education services and may emphasize areas identified as Statewide initiatives by PDE, such as autism, behavior support, transition to adult living, leadership, LRE, and reading.

### § 300.119 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.4


## § 300.120 – Monitoring activities.

Regarding PDE monitoring of § 300.114 - *LRE requirements*, PDE conducts Compliance Monitoring for Continuous Improvement (CMCI), Focused Monitoring, Target Monitoring, and Early Intervention Management Verification Reviews of school districts, charter schools,  cyber charter schools, and preschool early intervention programs to ensure compliance with applicable regulations.  When implementation of LRE is inconsistent with § 300.114, PDE takes into consideration the agency's justification for its implementation and assists in planning and implementing any necessary corrective action and improvement plans.

### § 300.120 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.4


## § 300.121 – Procedural safeguards.

Regarding the procedural safeguards required under §§ 300.500—300.536, PDE policy is supported by enforceable rules under the adoption by reference and/or explicit rule adoption under Chapter 14 and Chapter 711. The *adoption by reference* and explicit rules thereby incorporates Federal regulations covering all procedural safeguards under §§ 300.501—300.537, with the following exceptions:

- **§ 300.509 relating to *Model forms*.**  PDE has adopted model forms to assist parents and public agencies in filing a due process complaint under §§ 300.507 and 300.508

(relating to matters of identification, evaluation, or educational placement of a child with a disability or the provision of FAPE to the child). Additionally, PDE has adopted model forms to assist parents and other parties in filing State complaints under §§ 300.151— 300.153 (relating to the *State Complaint Procedures*, where an organization or individual may file a signed written complaint that a public agency has violated a requirement under Part B of the Individuals with Disabilities Education Act.)

There are neither rules nor policy requiring the use of the model forms so long as the alternate form or document used meets, as appropriate, the content for the purpose of filing the due process complaint and the filing of a State complaint.

- **§ 300.517 relating to *Attorney fees.*** PDE has not adopted any policy regarding these provisions because the duty is imposed on a court of competent jurisdiction to be applied to matters under due process complaint filed before the judicial body.

- **§ 300.518(c) relating to *Child's status during proceedings.*** It is PDE's policy that the Part B public agency will be required to continue the services previously provided under Part C, unless the parent consents otherwise or due process complaint procedures have been exhausted.

- **§ 300.520 relating to *Transfer of parental rights at age of majority.*** The age of majority in Pennsylvania is 21 years, thus IDEA rights of parents do not transfer to students at age 18.  However, under the regulations for the Family Educational Rights and Privacy Act of 1974, {34 CFR § 99.5(a)}, the rights of parents regarding education records are transferred to the student at age 18.

Therefore, except as described previously, PDE policy and supporting Commonwealth laws implement the Federal regulations covering all procedural safeguards under §§ 300.501— 300.537.

## § 300.121 Authority and/or Responsibility
22 Pa Code §§ 14.162–14.163
22 Pa. Code § 711.62


## § 300.122 – Evaluation

Regarding the procedural safeguards required under §§ 300.300—300.311, PDE policy is supported by enforceable rules under the adoption by reference and/or explicit rule adoption under Chapter 14 and Chapter 711.  The adoption by reference and explicit rules thereby incorporates Federal regulations covering procedural requirements for Evaluation under §§ 300.300—300.311, with the following exceptions being § 300.307 Specific learning disabilities, (a)(3). This regulation gives States discretion to develop procedures for the determination of specific learning disabilities.  PDE policy supported by PA regulation 22 Pa. Code § 14.125 and 22 Pa. Code § 711.25 (relating to Criteria for the determination of specific learning disabilities), at § 14.125 and § 711.25 (a)(2)(i), requires agencies to conform to State criteria which includes:

(i) A process based on the child's response to scientific, research-based intervention, which includes documentation that:

(A) The student received high quality instruction in the general education setting.

(B) Research-based interventions were provided to the student.

(C) Student progress was regularly monitored.

Additionally, State criteria to meet § 300.306 is supported by regulations under 22 Pa. Code § 14.125 and 22 Pa. Code § 711.25:

Each school district, intermediate unit, charter school, and cyber charter school shall develop procedures for the determination of specific learning disabilities that conform to criteria in this section.  These procedures shall be included in the school district's and intermediate unit's special education plan in accordance with § 14.104(b) (relating to special education plans). Charter schools and cyber charter schools shall include the procedures for the determination of specific learning disability in the school's application for a charter. To determine that a child has a specific learning disability, the school district or intermediate unit shall address whether the child does not achieve adequately for the child's age or meet State-approved grade-level standards in one or more of the following areas, when provided with learning experiences and scientifically based instruction appropriate for the child's age or State-approved grade-level standards:

(i)  Oral expression.

(ii)  Listening comprehension.

(iii)  Written expression.

(iv)  Basic reading skill.

(v)  Reading fluency skills.

(vi)  Reading comprehension.

(vii)  Mathematics calculation.

(viii)  Mathematics problem solving.

Using one of the following procedures:

(i)  A process based on the child's response to scientific, research-based intervention, which includes documentation that:

(A)  The student received high quality instruction in the general education setting.

(B)  Research-based interventions were provided to the student.

(C)  Student progress was regularly monitored.

(ii)  A process that examines whether a child exhibits a pattern of strengths and weaknesses, relative to intellectual ability as defined by a severe discrepancy between intellectual ability and achievement, or relative to age or grade.

Name of LEA

Having determined that its findings under this section are not primarily the result of:

(i)  A visual, hearing or orthopedic disability.

(ii)  Intellectual disability.

(iii)  Emotional disturbance.

(iv)  Cultural factors.

(v)  Environmental or economic disadvantage.

(vi)  Limited English proficiency.

And ensuring that underachievement in a child suspected of having a specific learning disability is not due to lack of appropriate instruction in reading or mathematics by considering documentation that:

(i)  Prior to, or as a part of, the referral process, the child was provided scientifically-based instruction in regular education settings, delivered by qualified personnel, as indicated by observations of routine classroom instruction.

(ii)  Repeated assessments of achievement were conducted at reasonable intervals, reflecting formal assessment of student progress during instruction, which was provided to the child's parents.

In addition to the requirements at 34 CFR § 300.301 (relating to initial evaluations), Chapter 14 and 711 provide additional requirements.  For children served under Chapter 14 and Chapter 711, the initial evaluation shall be completed and a copy of the evaluation report presented to the parents no later than *60 calendar days* after the agency receives written parental consent for evaluation, except that the calendar days from the day after the last day of the spring school term up to and including the day before the first day of the subsequent fall school term shall not be counted.

Parents may request an evaluation at any time, and the request must be in writing.  The school entity shall make the Permission to Evaluate Consent Form readily available for that purpose.  If a request is made orally to any professional employee or administrator of the school entity, that individual shall provide a copy of the Permission to Evaluate Request Form to the parents within 10 calendar days of the oral request.

## § 300.122 Authority and/or Responsibility
22 Pa. Code § 14.102(2)(xvi)
22 Pa. Code § 14.123(b)(c)
22 Pa. Code § 14.125
22 Pa. Code § 711.3(a)(xiii)
22 Pa. Code § 711.24(b)
22 Pa. Code § 711.25

## § 300.123 – Confidentiality of personally identifiable information.

Regarding the procedures for maintaining confidentiality of personally identifiable information required under §§ 300.610–300.626, PDE policy is supported by enforceable rules under the adoption by reference and/or explicit rule adoption under Chapter 14 and Chapter 711.  The adoption by reference and explicit rules thereby incorporates Federal regulations covering requirements for Confidentiality under §§ 300.610–300.626.

Additionally, it is PDE policy that notice is given that is adequate to fully inform parents about the requirements of this section including (1) a description of the extent that the notice is given in the native languages of the various population groups in PA; (2) a description of the children on whom personally identifiable information is maintained, the types of information sought, the methods PA intends to use in gathering the information (including the sources from whom information is gathered), and the uses to be made of the information; and (3) a summary of the policies and procedures that participating agencies must follow regarding storage, disclosure to third parties, retention, and destruction of personally identifiable information; and (4) a description of all of the rights of parents and children regarding this information, including the rights under the Family Educational Rights and Privacy Act of 1974 and implementing regulations in 34 CFR Part 99. Before any major identification, location, or evaluation activity, the notice must be published or announced in newspapers or other media, or both, with circulation adequate to notify parents throughout the State of the activity.

For children served under Chapter 711, each public charter school and cyber charter school shall forward the child's educational records, including the most recent IEP, within 10 school days after the charter school or cyber charter school is notified in writing that the child is enrolled at another public agency, private school, approved private school or private agency.  Charter schools and cyber charter schools shall maintain educational records for children with disabilities consistent with the regulations for the Family Educational Rights and Privacy Act of 1974 (20 U.S.C.A. §§ 1221 note and 1232g) in 34 CFR Part 99 (relating to family educational rights and privacy).

**Access rights.**   Each agency shall permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part. The agency shall comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing pursuant to § 300.507 and §§ 300.521—300.528, and in no case more than 45 days after the request has been made.

The right to inspect and review education records under this section includes (1) the right to a response from the participating agency to reasonable requests for explanations and interpretations of the records; (2) the right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records; and (3) the right to have a representative of the parent inspect and review the records.  An agency may presume that the parent has authority to inspect and review records relating to his or her child unless the agency has been advised that the parent does not have the authority under applicable State law governing such matters as guardianship, separation, and divorce.

**Record of access.**  Each participating agency shall keep a record of parties obtaining access to education records collected, maintained, or used under Part B of IDEA (except access by parents and authorized employees of the participating agency), including the name of the party, the date access was given, and the purpose for which the party is authorized to use the records.

**Records on more than one child.**  If any education record includes information on more than one child, the parents of those children have the right to inspect and review only the information relating to their child or to be informed of that specific information.

**List of types and locations of information.**  Each participating agency shall provide parents on request a list of the types and locations of education records collected, maintained, or used by the agency.

**Fees.**  Each participating agency may charge a fee for copies of records that are made for parents under this part if the fee does not effectively prevent the parents from exercising their right to inspect and review those records.  A participating agency may not charge a fee to search for or to retrieve information under this part.

**Amendment of records at parent's request.**   A parent who believes that information in the education records collected, maintained, or used under this part is inaccurate or misleading or violates the privacy or other rights of the child may request the participating agency that maintains the information to amend the record.  The agency shall decide whether to amend the information in accordance with the request within a reasonable period of time of receipt of the request. If the agency decides to refuse to amend the information in accordance with the request, it shall inform the parent of the refusal and advise the parent of the right to a hearing under § 300.568.

**Opportunity for a hearing.**   The agency shall, on request, provide an opportunity for a hearing to challenge information in education records to ensure that it is not inaccurate, misleading, or otherwise in violation of the privacy or other rights of the child.

**Result of hearing.**   If, as a result of the hearing, the agency decides that the information is inaccurate, misleading or otherwise in violation of the privacy or other rights of the child, it shall amend the information accordingly and so inform the parent in writing.  If, as a result of the hearing, the agency decides that the information is not inaccurate, misleading, or otherwise in violation of the privacy or other rights of the child, it shall inform the parent of the right to place in the records it maintains on the child a statement commenting on the information or setting forth any reasons for disagreeing with the decision of the agency.  Any explanation placed in the records of the child under this section must (1) be maintained by the agency as part of the records of the child as long as the record or contested portion is maintained by the agency; and (2) if the records of the child or the contested portion is disclosed by the agency to any party, the explanation must also be disclosed to the party.

**Hearing procedures.**   A hearing held under § 300.619 must be conducted according to the procedures under 34 CFR § 99.22.

**Consent.**  Except as to disclosures addressed in § 300.622 for which parental consent is not required by Part 99, parental consent must be obtained before personally identifiable information is (1) disclosed to anyone other than officials of participating agencies collecting or using the information under this part, subject to this section; or (2) used for any purpose other than meeting a requirement of this part.  An educational agency or institution subject to

34 CFR Part 99 may not release information from education records to participating agencies without parental consent unless authorized to do so under Part 99.  If a parent does not consent to release of information to the educational agency, which information has been determined to be necessary to evaluate the student under Part 300, the educational agency may, after unsuccessful attempts to obtain consent from the parent, seek permission to evaluate the student and if necessary gain a decision from a hearing officer when consent is not forthcoming from the parent.

Each participating agency shall protect the confidentiality of personally identifiable information at collection, storage, disclosure, and destruction stages.  One official at each participating agency shall assume responsibility for ensuring the confidentiality of any personally identifiable information.  All persons collecting or using personally identifiable information must receive training or instruction regarding PA's policies and procedures under § 300.123 and 34 CFR Part 99.  Each participating agency shall maintain, for public inspection, a current listing of the names and positions of those employees within the agency who may have access to personally identifiable information.

**Destruction of information.**  The public agency shall inform parents when personally identifiable information collected, maintained, or used under this part is no longer needed to provide educational services to the child. The information must be destroyed at the request of the parents.  However, a permanent record of a student's name, address, and phone number, his or her grades, attendance record, classes attended, grade level completed, and year completed may be maintained without time limitation.

**Children's rights.**  The age of majority in Pennsylvania is 21 years, thus IDEA rights of parents do not transfer to students at age 18.  However, under the regulations for the Family Educational Rights and Privacy Act of 1974, {34 CFR § 99.5(a)}, the rights of parents regarding education records are transferred to the student at age 18.

**Enforcement.**  PDE, under its supervisory responsibilities, shall intervene when issues of compliance with confidentiality requirements are raised, and will adhere to the procedures meeting the requirements under 34 CFR §§ 300.151—300.153. The response of PDE will vary from case to case.  The main features of efforts will be to explain the problem, call upon the educational agency to implement a remedy, and assist them with ideas as to what a remedy might involve.  If, however, PDE does not succeed in obtaining prompt compliance, it can take more rigorous steps to make sure that the compliance issue is resolved in a timely manner, including the following: (1) A local special education plan may be disapproved; (2) The disbursement of state and federal funds may be deferred pending resolution of the issue; (3) The amount of funds may be reduced; (4) Seek court order requiring the educational agency to take specific actions; (5) Join with parents in legal action initiated by them and; (6) Take action affecting the commission of the commissioned officer responsible for administering the public agency.

**Disciplinary information.**  PDE policy requires that a public agency include in the records of a child with a disability a statement of any current or previous disciplinary action that has been taken against the child and transmit the statement to the same extent that the disciplinary information is included in, and transmitted with, the student records of nondisabled children.  The statement may include a description of any behavior engaged in by the child that required disciplinary action, a description of the disciplinary action taken, and any other information that is relevant to the safety of the child and other individuals involved with the child.  If the child transfers from one school to another, the transmission of any of the child's records must include

both the child's current individualized education program and any statement of current or previous disciplinary action that has been taken against the child.

## § 300.123 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xxxiii)
22 Pa. Code § 711.3 (b)(xxx)
22 Pa. Code § 711.8


## § 300.124 – Transition of children from the Part C program to preschool programs.

Regarding 34 CFR *§ 300.124, Transition of children from the Part C program to preschool programs*, PDE and DHS (the Part C agency) through the Office of Child Development and Early Learning (OCDEL) has developed policies and procedures which assure the smooth transition of eligible young children from Part C services to preschool services on the third birthday of the eligible young child. Additionally, when an eligible young child turns 3 years of age and if necessary to allow for uninterrupted services for the child and family throughout the transition year, it is PDE's policy that the Individual Family Services Plan, where one exists, shall be converted to an IEP by an IEP team, in accordance with Chapter 14 and this document (see "Individualized Education Program"), and which must be in effect as of the child's third birthday. These policies and procedures were distributed to all public agencies through the dissemination of a Basic Education Circular (11 P.S. § 875-304; Early Intervention Transition: Infant and Toddlers to Preschool) and an Announcement: EI-09 #3 (Transition of Toddlers to Preschool or Other Community Services). A representative of the *early intervention agency*, as defined under 22 Pa. Code § 14.101, will participate in the transition planning conference.

## § 300.124 Authority and/or Responsibility
22 Pa. Code § 14.101
22 Pa. Code § 14.156


## § 300.129 – State responsibility regarding children in private schools.

In Pennsylvania, for purposes of this section and §§300.130 through 300.144, Intermediate Units are responsible for implementing services to children with disabilities enrolled by their parent in private schools. Each Intermediate Unit is, for purposes of implementing §§ 300.130–300.144, the *Local Educational Agency*.

Each IU submits annually to the PDE Secretary, a special education plan specifying the special education services and programs to be operated to meet the requirements under §§ 300.130–300.144.

## § 300.129 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 14.103, see definition of *Local educational agency*
22 Pa. Code § 14.104

## § 300.130 – Definition of parentally-placed private school children with disabilities.

Parentally-placed private school children with disabilities means children with disabilities enrolled by their parents in private, including religious, schools or facilities. Schools or facilities are those that meet one or both the following definitions:

Elementary school means a nonprofit institutional day or residential school, including a public elementary charter school, that provides elementary education, as determined under State law.

Secondary school means a nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12.

### § 300.130 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(iii)(vii)
22 Pa. Code § 711.3(b)(ii)(vi)

## § 300.131 – Child find for parentally-placed private school children with disabilities.

It is PDE policy that the Intermediate Unit (IU) shall implement the following: Each IU must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools located within IU service area, by implementing:

- Child find process designed to ensure the equitable participation of parentally-placed private school children.

- Accurate count of those children.

- Activities similar to the activities undertaken for children enrolled in public school.

- Cost of carrying out the child find requirements, including individual evaluations, not be considered in determining if an LEA has met its obligation under *Expenditures* (see description under § 300.133).

- Completed in a time period comparable to that for students attending public schools in the IU consistent with § 300.111.

- Include parentally-placed private school children who reside in a State other than Pennsylvania who attend private, including religious, elementary schools and secondary schools located within IU service area.

### § 300.131 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.132 – Provision of services for parentally-placed private school children with disabilities – basic requirement.

It is PDE policy that the IU must make provision, to the extent consistent with the number and location of children with disabilities who are enrolled by their parents in private schools, located in IU service area, for the participation of those children in the program assisted or carried out under the IU plan, by providing them with special education and related services, including direct services determined in accordance with § 300.137.

A services plan must be developed and implemented for each private school child with a disability who has been designated by the IU in which the private school is located to receive special education and related services.

Each IU must maintain in its records and provide to PDE the following information related to parentally-placed private school children:

    (1) The number of children evaluated;

    (2) The number of children determined to be children with disabilities; and

    (3) The number of children served.

### § 300.132 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.133 – Expenditures.

**Formula.**  Each IU must spend the following on providing special education and related services (including direct services) to parentally-placed private school children with disabilities:

    (1)  For children aged 3 through 21, an amount that is the same proportion of the IU's total subgrant under § 611(f) of the IDEA-B as the number of private school children with disabilities aged 3 through 21 who are enrolled by their parents in private schools, located in the IU service area, is to the total number of children with disabilities in IU's jurisdiction aged 3 through 21.

    (2)  For children aged three through five, an amount that is the same proportion of the IU's total subgrant under § 619(g) of the IDEA-B as the number of parentally-placed private school children with disabilities aged three through five who are enrolled by their parents in a private school located in the IU, is to the total number of children with disabilities in its jurisdiction aged three through five.

    (3)  If an IU has not expended for equitable services all of the funds by the end of the fiscal year for which Congress appropriated the funds, the IU must obligate the remaining funds for special education and related services (including direct services) to parentally-placed private school children with disabilities during a carry-over period of one additional year.

**Calculating proportionate amount.**  In calculating the proportionate amount of Federal funds to be provided for parentally-placed private school children with disabilities, the IU, after timely and meaningful consultation with representatives of private schools, must conduct a thorough and complete child find process to determine the number of parentally-placed children with disabilities attending private schools located in the IU.

**Annual count.**  Each IU must, after timely and meaningful consultation with representatives of private schools, determine the number of parentally-placed private school children with disabilities attending private schools located in the IU.

The IU must ensure that the count is conducted on any date between October 1 and December 1, inclusive, of each year.  The count must be used to determine the amount that the IU must spend on providing special education and related services to parentally-placed private school children with disabilities in the next subsequent fiscal year.

**Supplement, not supplant.**  State and local funds may supplement and in no case supplant the proportionate amount of IDEA-B funds required to be expended for parentally-placed private school children with disabilities.

## § 300.133 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104


# § 300.134 – Consultation.

It is PDE policy that the IU must consult with private school representatives and representatives of parents of parentally-placed private school children with disabilities during the design and development of special education and related services for the children regarding the following:

- The child find process, including—

    (1) How parentally-placed private school children suspected of having a disability can participate equitably; and

    (2) How parents, teachers, and private school officials will be informed of the process.

- The determination of the proportionate share of IDEA-B funds available to serve parentally-placed private school children with disabilities including the determination of how the proportionate share of those funds are calculated.

- The consultation process among the IU, private school officials, and representatives of parents of parentally-placed private school children with disabilities, including how the process will operate throughout the school year to ensure that parentally-placed children with disabilities identified through the child find process can meaningfully participate in special education and related services.

- How, where, and by whom special education and related services will be provided for parentally-placed private school children with disabilities, including a discussion of—

(1) The types of services, including direct services and alternate service delivery mechanisms; and

(2) How special education and related services will be apportioned if funds are insufficient to serve all parentally-placed private school children; and

(3) How and when those decisions will be made.

- Written explanation by the IU regarding how, if the IU disagrees with the views of the private school officials on the provision of services or the types of services (whether provided directly or through a contract), the IU will provide to the private school officials a written explanation of the reasons why the IU chose not to provide services directly or through a contract.

## § 300.134 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

# § 300.135 – Written affirmation.

When timely and meaningful consultation has occurred, the IU must obtain a written affirmation signed by the representatives of participating private schools.  If the representatives do not provide the affirmation within a reasonable period of time, the IU must forward the documentation of the consultation process to PDE.

## § 300.135 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

# § 300.136 – Compliance.

A private school official has the right to submit a complaint to PDE that the IU did not engage in consultation that was meaningful and timely or did not give due consideration to the views of the private school official.

If the private school official wishes to submit a complaint, the official must provide to PDE the basis of the noncompliance by the IU with the applicable private school provisions and the IU must forward the appropriate documentation to PDE.

If the private school official is dissatisfied with the decision of PDE, the private school official may submit a complaint to the U.S. Department of Education's Secretary by providing the information on noncompliance described under this section.

PDE must forward the appropriate documentation to the U.S. Department of Education's Secretary.

## § 300.136 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.137 – Equitable services determined.

No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school.  The IU must make the final decisions with respect to the services to be provided to eligible parentally-placed private school children with disabilities.

IU decisions about the services that will be provided to parentally-placed private school children with disabilities must be made in accordance with the following:

- Initiating and conducting meetings to develop, review, and revise a services plan for the child, in accordance with § 300.138(b); and

- Ensuring that a representative of the religious or other private school attends each meeting. If the representative cannot attend, the IU shall use other methods to ensure participation by the religious or other private school, including individual or conference telephone calls.

### § 300.137 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104
22 Pa. Code § 14.121(d)


## § 300.138 – Equitable services provided.

IU services provided to parentally-placed private school children with disabilities must be provided by personnel meeting the same standards as personnel providing services in the public schools, except that private elementary school and secondary school teachers who are providing equitable services to parentally-placed private school children with disabilities do not have to meet the highly qualified special education teacher requirements of IDEA-B.

Parentally-placed private school children with disabilities may receive a different amount of IU services than children with disabilities in public schools. Each parentally-placed private school child with a disability who has been designated by the IU to receive services must have a services plan that describes the specific special education and related services that the IU will provide to the child in light of the services that the IU has determined it will make available to parentally-placed private school children with disabilities.

The services plan must, to the extent appropriate, meet the requirements with respect to the services provided as is provided to public school children with disabilities served.  The services plan must be developed, reviewed, and revised as provided to IEPs for public school children with disabilities.

The provision of services must be provided:

- By employees of the IU; or

- Through contract by the IU with an individual, association, agency, organization, or other entity.

Special education and related services provided to parentally-placed private school children with disabilities, including materials and equipment, must be secular, neutral, and nonideological.

## § 300.138 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104
22 Pa. Code § 14.121(d)


# § 300.139 – Location of services and transportation.

IU services to parentally-placed private school children with disabilities may be provided on the premises of private, including religious, schools, to the extent consistent with law.

If necessary for the child to benefit from or participate in the services provided under this part, a parentally-placed private school child with a disability must be provided transportation—

- From the child's school or the child's home to a site other than the private school; and

- From the service site to the private school, or to the child's home, depending on the timing of the services.

- An IU is not required to provide transportation from the child's home to the private school.

The cost of the transportation described may be included in calculating whether the LEA has met the requirement of § 300.133 – Expenditures.

## § 300.139 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104


# § 300.140 – Due process complaints and State complaints.

Regarding the IU provision of services to parentally-placed private school children with disabilities, due process provisions under § 300.121 – Procedural safeguards are not applicable except for child find. That is, due process proceedings under §§ 300.504–3 00.519 do not apply to complaints that the IU has failed to meet the requirements §§ 300.132–300.139.

Regarding child find complaints against an IU, such complaints may be filed under due process proceedings under §§ 300.504–300.519 that the IU has failed to meet the child find requirements, including complaints regarding initial evaluation, reevaluation, determination of eligibility, existence of a specific learning disability, observation, and documentation of eligibility as prescribed under provisions under §§ 300.300–300.311.

Any due process complaint regarding the child find requirements must be filed with the IU in which the private school is located and a copy must be forwarded to PDE.

Any complaint that an IU has failed to meet the requirement regarding parentally- placed children in private schools must be filed in accordance with the procedures described in §§ 300.15–300.153.

A complaint filed by a private school official must be filed with PDE in accordance with the procedures in § 300.136 – Compliance.

### § 300.140 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.141 – Requirement that funds not benefit a private school.

An IU may not use funds provided under § 611 or § 619 of the IDEA-B to finance the existing level of instruction in a private school or to otherwise benefit the private school.

The IU must use funds provided under IDEA-B to meet the special education and related services needs of parentally-placed private school children with disabilities, but not for meeting—

- The needs of a private school; or

- The general needs of the students enrolled in the private school.

### § 300.141 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.142 – Use of personnel.

An IU may use funds available to make public school personnel available in other than public facilities to the extent necessary to provide services for parentally-placed private school children with disabilities; and if those services are not normally provided by the private school.

An IU may use funds available to pay for the services of an employee of a private school to provide services to parentally-placed private school children with disabilities if:

- The employee performs the services outside of his or her regular hours of duty; and

- The employee performs the services under public supervision and control.

### § 300.142 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104

## § 300.143 – Separate classes prohibited.

An IU may not use funds available for classes that are organized separately on the basis of school enrollment or religion of the children if--

- The classes are at the same site; and

- The classes include children enrolled in public schools and children enrolled in private schools.

### § 300.143 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104


## § 300.144 – Property, equipment, and supplies.

The IU must control and administer the funds used to provide special education and related services, and hold title to and administer materials, equipment, and property purchased with those funds for the uses and purposes provided in the IDEA.

The IU may place equipment and supplies in a private school for the period of time needed for the IDEA program.  The IU must ensure that the equipment and supplies placed in a private school are used only for IDEA-B purposes; and can be removed from the private school without remodeling the private school facility.

The IU must remove equipment and supplies from a private school if the equipment and supplies are no longer needed for IDEA-B purposes; or removal is necessary to avoid unauthorized use of the equipment and supplies for other than IDEA-B purposes.

The IU may not use funds under IDEA-B for repairs, minor remodeling, or construction of private school facilities.

### § 300.144 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 14.104


## § 300.145 – Applicability of §§ 300.146–300.147.

§§ 300.146–300.147 apply only to children with disabilities who are or have been placed in or referred to a private school or facility by a public agency as a means of providing special education and related services.

### § 300.145 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.146 – Responsibility of SEA.

PDE ensures that a child with a disability who is placed in or referred to a private school or facility by a public agency is provided special education and related services in conformance with an IEP that meets the requirements of this document; and at no cost to the parents; is provided an education that meets the standards that apply to education provided by PDE and LEAs; and has all of the rights of a child with a disability who is served by a public agency.

Regarding the requirements regarding *Private Schools* at 34 CFR § 300.146 and § 300.147, PDE is responsible for developing and maintaining a system that ensures that each student with a disability receives a free appropriate public education and that each family has the benefits of a system of procedural safeguards. While school districts, charter schools, cyber charter schools, and, for preschool students, "mutually agreed-upon written arrangement" (MAWA) agencies, have the primary and direct responsibility for carrying this out, federal law places upon PDE a "general supervision" responsibility. Similarly, state law calls upon the Secretary to superintend the system and enforce the special education requirements. PDE understands these requirements to mean that PDE is to have a comprehensive system that coordinates various planning, funding, and compliance elements.

The implementation of *Children with Disabilities in Private Schools Placed or Referred by Public Agencies* is accomplished by PDE through its monitoring procedure which includes onsite visits, parent interviews, and written reports of findings and conclusions, including where necessary, corrective action including enforcement actions. Prior to adoption of applicable rules, private schools and facilities are afforded an opportunity to provide input through public participation as required by IDEA-B. Additionally, regulations adopted for students attending public schools are fully in effect for students with disabilities who are placed by school districts and early intervention agencies into private schools, and are made known to private schools and facilities through adoption in the *Pennsylvania Bulletin* and newspapers and other public medium including PDE's maintained web sites.

### § 300.146 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 14.104

## § 300.147 – Implementation by SEA

The implementation of *Children with Disabilities in Private Schools Placed or Referred by Public Agencies*, is accomplished by PDE through its monitoring procedures which includes onsite visits, parent interviews and written reports of findings and conclusion, including where necessary, corrective action including enforcement actions. Prior to adoption of applicable rules, private schools and facilities are afforded an opportunity to provide input through public participation as required by IDEA-B. Additionally, regulations adopted for students attending public schools are fully in effect for students with disabilities who are placed by school districts and early intervention agencies into private schools, and are made known to private schools and facilities through adoption in the *Pennsylvania Bulletin* and newspapers and other public medium including PDE's maintained web sites.

### § 300.147 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.148 – Placement of children by parents when FAPE is at issue.

An agency is not required to pay for the cost of an education, including special education and related services of a child with a disability at a private school or facility, if the agency made FAPE available to the child and the parents elected to place the child in a private school or facility. However, the child must be included in the population whose needs are addressed by an IU, consistent with the provisions of §§ 300.131–300.144, relating to parentally-placed private school children with disabilities.

Disagreements between the parents and a public agency regarding the availability of a program appropriate for the child, and the question of financial reimbursement, are subject to the due process procedures in §§ 300.504–300.520, adopted by reference under Chapter 14 (22 Pa. Code § 14.102) and Chapter 711 (22 Pa. Code § 711.3).

If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.

A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the State standards that apply to education provided by the public agency.

The cost of reimbursement described above, may be reduced, or denied:

- If at the most recent IEP Team meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide FAPE to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or if at least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described herein this section.

- If, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in § 300.503(a)(1), of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for the evaluation; or upon a judicial finding of unreasonableness with respect to actions taken by the parents.

Notwithstanding the notice requirement under this section, the cost of reimbursement:

(1) Must not be reduced or denied for failure to provide the notice if—

   (i) The school prevented the parents from providing the notice;

(ii) The parents had not received notice, pursuant to Sec. 300.504, of the notice requirement in paragraph (d)(1) of this section; or

(iii) Compliance with paragraph (d)(1) of this section would likely result in physical harm to the child; and

(2) May, in the discretion of the court or a hearing officer, not be reduced or denied for failure to provide this notice if --

(i) The parents are not literate or cannot write in English; or

(ii) Compliance with paragraph (d)(1) of this section would likely result in serious emotional harm to the child.

## § 300.148 Authority and/or Responsibility
22 Pa. Code § 14.102(b)(xv)
22 Pa. Code § 711.3(b)(xvi)


## § 300.149 – SEA responsibility for general supervision.

PDE is responsible for ensuring that the requirements of IDEA are carried out and that each educational program for children with disabilities administered within PA, including each program administered by any other State or local agency is under the general supervision of the persons responsible for educational programs for children with disabilities in the Commonwealth and meets the education standards of PDE (including the requirements of 34 CFR Part 300). PDE complies with this section through 22 Pa. Code Chapter 14, 22 Pa. Code Chapter 711, PA State Statute (Public School Code at 24 P.S. §§ 13-1357, 13-1372, and 25-2552), Memorandum of Understanding Pennsylvania's Departments of Education, Human Services, Labor and Industry and Health, and PDE's Statewide monitoring system described below.

Note that all monitoring activities, including preparation for on-site, conducting the monitoring, and follow up are standardized statewide. Pennsylvania consults regularly with stakeholders and the State Advisory Panel regarding the design and implementation of the state's monitoring system.

**COMPONENTS OF CYCLICAL MONITORING**

**The Facilitated Self-Assessment (FSA)** –  Local Educational Agency (LEA) assesses and reports on its compliance and accomplishments with respect to a variety of policies, procedures, student outcomes, file reviews and program operations.  The FSA is prepared by the LEA prior to the on-site portion of monitoring.  It is used to facilitate discussion between the LEA and monitoring team and to assist PDE to identify areas of non-compliance and needed improvement.

**File Review** – Monitoring team reviews student records on-site to determine compliance with requirements for evaluation, IEP, placement, secondary transition, and procedural safeguards.

**Interviews** – Monitoring team interviews parents, administrators, and teachers of students selected by the Bureau of Special Education (BSE) or Bureau of Early Intervention Services

(BEIS) for the sample group.  The goal is to determine if the LEA involves parents, professionals, and students in required processes e.g., IEP development, whether programs and services are being provided, and whether the LEA provides training to enhance knowledge. Parent, student, and teacher satisfaction with the public agency's special education program is also generally reflected.

**Monitoring Outcomes** – When onsite monitoring has been completed, PDE prepares and issues a Report of Findings to the LEA. The Report consists of findings in ten general topical areas:

1. Policies and Procedures
2. Performance Outcomes
3. Training for Parents and Professionals
4. Evaluation of Students
5. IEPs
6. IEP Implementation
7. Secondary Transition
8. Educational Placement (including LRE)
9. Discipline
10. Procedural Safeguards

The Report is formatted so that findings from all components of the monitoring are consolidated by topical area. The Report lists the finding, and whether corrective action and/or improvement planning is required. For certain types of findings, corrective action will be prescribed, and will not vary from LEA to LEA.  For example, if the finding is that the LEA lacks a specific required policy, it is reasonable to have PDE prescribe a standardized remedy and timeline for correcting this deficiency.  However, the majority of corrective action strategies are individually designed by the LEA based on their own unique circumstances and goals.  The BSE's Single Point of Contact (SPOC) and BEIS's Early Intervention Advisors, and the LEA mutually agree upon the Compliance Plan for Corrective Action and Improvement.  All corrections of noncompliance must be completed by the LEA as soon as possible, but not later than one year from identification.

PDE maintains educational consultants who are required to participate in the development of the Compliance Plan for Corrective Action.  These consultants and Intermediate Unit personnel forward documentation  to the LEA as assigned in the agreed upon Compliance Plan for Corrective Action. LEA personnel are responsible for providing documentation to their SPOC or Early Intervention Advisor to verify completion of corrective action.   The SPOC or Early Intervention Advisor maintains overall responsibility for documenting implementation of the corrective action and follows a verification schedule as documented in the Compliance Plan for Corrective Action.

Educational consultants and Early Intervention Advisors support the LEA in corrective action verification in a variety of ways, e.g., providing technical assistance to improve LEA file reviews, collecting and reviewing required documents, providing, and verifying the provision of required training as outlined in the plan.  All activity will be documented so that verification can occur and be maintained by the BSE and BEIS.

In addition to cyclical monitoring, the BSE has effective systems in place for review of LEA data submissions to ensure accuracy, and conducting focused and target monitoring in selected priority areas, as indicated by stakeholder input, other state level BSE priorities and the State

Performance Plan. Pennsylvania complies with all requirements of §300.600 for the State Performance Plan, Annual Performance Report, and timely and accurate submission of required federal data.

Part B of IDEA does not limit the responsibility of agencies other than educational agencies for providing or paying some or all of the costs of FAPE to children with disabilities in the State. PDE retains responsibility for ensuring special education and related services are provided to students incarcerated in juvenile and adult facilities. Regarding the responsibility for all education programs, Act 15 of 1999, provides for the provision of special education to students in State Correctional Institutions (adult prisons) by PDE of Correction.  This Act was signed into law by the Governor on June 11, 1999, effective July 1, 1999.

## § 300.149 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.150 – SEA implementation of procedural safeguards.

Regarding the requirements *SEA implementation of procedural safeguards*, it is the policy of PDE to carry out activities to ensure effective implementation of procedural safeguards for children with disabilities served by public agencies.

In addition, periodic training of hearing officers is undertaken to ensure their activities result in the provision of procedural safeguards on a case-by-case review.

Training and technical assistance is afforded teachers and administrators through a multi-prong approach. First, State Board's and PDE's regulations provide enforceable policies and procedures and are made known through the public participation adoption of rules. Moreover, State law requires public notice in the official gazette of the Commonwealth, the *Pennsylvania Bulletin*. Third, Basic Education Circulars (BEC), Penn*Links, and Announcements are disseminated to the field that provide guidance regarding procedural safeguards and placement in the Least Restrictive Environment. Regulations, Basic Education Circulars, Penn*Links, and Announcements are available to teachers and administrators through PDE's web sites.

PDE's monitoring may produce findings whereby procedural safeguards and Least Restrictive Environment implementation falls short of compliance with federal and state regulations and, thereby, PDE initiates the provision of training and technical assistance to teachers and administrators regarding educational placements in the Least Restrictive Environment. Prior to monitoring, local education agencies are afforded the additional opportunity to attend in-service training to prepare them for the activity. This activity is yet an additional opportunity provided to LEAs to learn of their duties regarding procedural safeguards and includes school district, charter school, and early intervention administrative staff.

PDE maintains projects through contracted agencies whose mission it is to support the efforts of the Bureau of Special Education and Bureau of Early Intervention Services, including rendering technical assistance and training to teachers and administrators on procedural safeguards and Least Restrictive Environment, consistent with IDEA-B, PDE's regulations pertaining to special education for charter schools, and the State Board regulations pertaining to Special Education. These agency's mission includes building capacity of the local educational agency to provide appropriate services to students who receive special education services and may emphasize

areas identified as Statewide initiatives by PDE, such as, autism, behavior support, transition to adult living, leadership and reading.

PDE ensures its implementation of procedural safeguards through its Bureau of Correction Education through ongoing provision of information to inform administrative and instructional staff of the agency's responsibilities for implementing effectively procedural safeguards for students with disabilities receiving special education at State Correctional Institutions (SCI), (i.e., adult prisons). This is accomplished by providing technical assistance and training by support staff attending meetings on procedural safeguard implementation. Changes in procedural safeguard procedures, as necessary by amendments to law, are identified via notice in the *Pennsylvania Bulletin* and/or the contracted agency's Regional Assessment Support Teams and distributed to all special education staff. Annually, staff attend multiple day trainings conducted by the Bureau of Correction Education and PDE, where they are provided updated information regarding procedural safeguards.

### § 300.150 Authority and/or Responsibility
22 Pa. Code § 14.162
22 Pa. Code § 711.3(b)(xxvi)


## § 300.151 – Adoption of State complaint procedures.

PDE has adopted written procedures for resolving any complaint, including a complaint filed by an organization or individual from another State. These procedures are widely disseminated to parents and other interested individuals, including parent training and information centers, protection and advocacy agencies, independent living centers, and other appropriate entities.

In resolving a complaint in which PDE has found a failure to provide appropriate services, pursuant to PDE's general supervisory authority under IDEA-B, PDE addresses:

- The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and

- Appropriate future provision of services for all children with disabilities.

### § 300.151 Authority and/or Responsibility
22 Pa. Code § 14.107
22 Pa. Code § 711.10


## § 300.152 – Minimum State complaint procedures.

PDE includes in its complaint procedures a time limit of 60 days after a complaint is filed to –

- Carry out an independent on-site investigation, if the SEA determines that an investigation is necessary;

- Give the complainant the opportunity to submit additional information, either orally or in writing, about the allegations in the complaint;

**Name of LEA**

- Provide the public agency with the opportunity to respond to the complaint, including, at a minimum—

    (i) At the discretion of the public agency, a proposal to resolve the complaint; and

    (ii) An opportunity for a parent who has filed a complaint and the public agency to voluntarily engage in mediation consistent with §300.506;

- Review all relevant information and make an independent determination as to whether the public agency is violating a requirement of Part B of the Act or of this part; and

- Issue a written decision to the complainant that addresses each allegation in the complaint and contains—

    (i) Findings of fact and conclusions; and

    (ii) The reasons for the SEA's final decision. PDE's procedures—

- Permit an extension of the time limit under paragraph (a) of this section only if—

    (i) Exceptional circumstances exist with respect to a particular complaint; or

    (ii) The parent (or individual or organization, if mediation or other alternative means of dispute resolution is available to the individual or organization under State procedures) and the public agency involved agree to extend the time to engage in mediation, or to engage in other alternative means of dispute resolution available in Pennsylvania.

- Include procedures for effective implementation of PDE's final decision, if needed, including—

    (i) Technical assistance activities; (ii) Negotiations; and

    (iii) Corrective actions to achieve compliance.

PDE's procedures further provide that if a written complaint is received that is also the subject of a due process hearing under §300.507 or §§300.530 through 300.532, or contains multiple issues of which one or more are part of that hearing, PDE must set aside any part of the complaint that is being addressed in the due process hearing until the conclusion of the hearing. The procedures further provide that if any issue in the complaint that is not a part of the due process action must be resolved using the time limit and procedures described under this section.

PDE's procedures provide that if an issue raised in a complaint filed has previously been decided in a due process hearing involving the same parties the due process hearing decision is binding on that issue and PDE gives notice to inform the complainant to that effect.

Lastly, PDE's procedures provide that if a complaint alleging a public agency's failure to implement a due process hearing decision is received, PDE resolves it.

## § 300.152 Authority and/or Responsibility
22 Pa. Code § 14.107
22 Pa Code § 711.10


## § 300.153 – Filing a complaint.

PDE's procedures for filing a complaint are as follows.

An organization or individual may file a signed written complaint under the procedures described in §§ 300.151—300.153.  The complaint must include—

(1) A statement that a public agency has violated a requirement of IDEA-B;

(2) The facts on which the statement is based;

(3) The signature and contact information for the complainant; and

(4) If alleging violations with respect to a specific child—

 (i) The name and address of the residence of the child;

 (ii) The name of the school the child is attending;

 (iii) In the case of a homeless child or youth (within the meaning of § 725(2) of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11434a (2)), available contact information for the child, and the name of the school the child is attending;

 (iv) A description of the nature of the problem of the child, including facts relating to the problem; and

 (v) A proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed.

The complaint must allege a violation that occurred not more than one year prior to the date that the complaint is received.

The party filing the complaint must forward a copy of the complaint to the LEA or public agency serving the child at the same time the party files the complaint with PDE.

## § 300.153 Authority and/or Responsibility
22 Pa. Code § 14.107
22 Pa Code § 711.10


## § 300.154 – Methods of ensuring services.

**Establishing responsibility for services.**  Interagency Memorandum of Understanding Among the PA Departments of Education, Human Services, Labor and Industry and Health, has been

established to ensure services that are needed to ensure FAPE are provided, including the provision of services during the pendency of any dispute. The agreement includes the following:

1. **Agency financial responsibility.**  An identification of, or a method for defining, the financial responsibility of each agency for providing services to ensure FAPE to children with disabilities.  The financial responsibility of each noneducational public agency described in this section, including the State Medicaid agency and other public insurers of children with disabilities, must precede the financial responsibility of the LEA (or any State agency responsible for developing the child's IEP).

2. **Conditions and terms of reimbursement.**  The conditions, terms, and procedures under which an LEA must be reimbursed by other agencies.

3. **Interagency disputes**.  Procedures for resolving interagency disputes (including procedures under which LEAs may initiate proceedings) under the agreement or other mechanism to secure reimbursement from other agencies or otherwise implement the provisions of the agreement or mechanism.

4.  **Coordination of services procedures.**  Policies and procedures for agencies to determine and identify the interagency coordination responsibilities of each agency to promote the coordination and timely and appropriate delivery of services described in this section.

**Obligation of noneducational public agencies.**  If any public agency other than an educational agency is otherwise obligated under Federal or State law, or assigned responsibility under State policy or pursuant to this section, to provide or pay for any services that are also considered special education or related services (such as, but not limited to, services described in § 300.5 of IDEA relating to assistive technology devices, § 300.6 of IDEA relating to assistive technology services, § 300.34 of IDEA relating to related services, § 300.42 of IDEA relating  to supplementary aids and services, and § 300.43 of IDEA relating to transition services) that are necessary for ensuring FAPE to children with disabilities within the State, the public agency shall fulfill that obligation or responsibility, either directly or through contract or other arrangement.

A noneducational public agency described in this section may not disqualify an eligible service for Medicaid reimbursement because that service is provided in a school context.

**Reimbursement for services by noneducational public agency.**  If a public agency other than an educational agency fails to provide or pay for the special education and related services described in this section, the LEA (or State agency responsible for developing the child's IEP) shall provide or pay for these services to the child in a timely manner.  The LEA or State agency may then claim reimbursement for the services from the noneducational public agency that failed to provide or pay for these services and that agency shall reimburse the LEA or State agency in accordance with the terms of the interagency agreement described in this section.

**Special rule.**  The requirements of this section are met through a signed agreement between respective agency officials that clearly identify the responsibilities of each agency relating to the provision of services.

**Children with disabilities who are covered by public insurance.**  A public agency may use the Medicaid or other public insurance benefits programs in which a child participates to provide

or pay for services required under this part, as permitted under the public insurance program, except as provided in the following paragraph of this section.

Regarding the services required to provide FAPE to an eligible child under this part, the public agency:

- may not require parents to sign up for or enroll in public insurance programs in order for their child to receive FAPE under Part B of the Act,

- may not require parents to incur an out-of-pocket expense such as the payment of a deductible or co-pay amount incurred in filing a claim for services provided pursuant to this part, but as described below,

- may pay the cost that the parent otherwise would be required to pay,

- may not use a child's benefits under a public insurance program if that use would decrease available lifetime coverage or any other insured benefit; result in the family paying for services that would otherwise be covered by the public insurance program and that are required for the child outside of the time the child is in school; increase premiums or lead to the discontinuation of insurance; or risk loss of eligibility for home and community-based waivers, based on aggregate health-related expenditures,

- must obtain parental consent consistent with Sec. 300.9 (relating to consent) each time that access to public benefits or insurance is sought and notify parents that refusal to allow access to public benefits or insurance does not relieve the public agency of its responsibility to ensure all services are provided at no cost to parents.

**Children with disabilities who are covered by private insurance.** Regarding the services required to provide FAPE to an eligible child under this part, a public agency may access a parent's private insurance proceeds only if the parent provides informed consent consistent with the informed consent requirements of this document. Each time the public agency proposes to access the parent's private insurance proceeds, it must obtain parent consent as described immediately above; and inform the parents that their refusal to permit the public agency to access their private insurance does not relieve the public agency of its responsibility to ensure that all required services are provided at no cost to the parents.

**Use of Part B funds.** If a public agency is unable to obtain parental consent to use the parent's private insurance, or public insurance when the parent would incur a cost for a specified service required under this part, to ensure FAPE the public agency may use its Part B funds to pay for the service. To avoid financial cost to parents who otherwise would consent to use private insurance, or public insurance if the parent would incur a cost, the public agency may use its Part B funds to pay the cost the parents otherwise would have to pay to use the parent's insurance (e.g., the deductible or co-pay amounts).

**Proceeds from public or private insurance.** Proceeds from public or private insurance will not be treated as program income for purposes of 34 CFR § 80.25. If a public agency spends reimbursements from Federal funds (e.g., Medicaid) for services under this part, those funds will not be considered "State or local" funds for purposes of the maintenance of effort provisions in IDEA.

**Construction.** Nothing in this part should be construed to alter the requirements imposed on a State Medicaid agency, or any other agency administering a public insurance program by

Federal statute, regulations, or policy under Title XIX, or Title XXI of the Social Security Act, 42 U.S.C. § 1396 through 1396 (v) and 42 U.S.C. § 1397 (aa) through 1397 (jj), or any other public insurance program.

## § 300.154 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.3(a)

## § 300.155 – Hearings related to LEA eligibility.

Prior to making any final determination that an LEA is not eligible for assistance under IDEA-B, PDE will give the LEA reasonable notice and an opportunity for a hearing under 34 CFR § 76.401(d).

## § 300.155 Authority and/or Responsibility
22 Pa. Code § 14.104(g)

## § 300.156 – Personnel qualifications.

PDE fulfills its responsibility based in part on the State Board of Education's adoption of Chapter 14, Chapter 49 (Certification of Professional Personnel) Chapter 403, and PDE's regulations under Chapter 711 (22 PA Code Chapters 14, 49, 403 & 711).

PDE has established and maintains qualifications to ensure that personnel necessary to carry out the purposes of this part are appropriately and adequately prepared and trained, including that those personnel have the content knowledge and skills to serve children with disabilities. PDE ensures the qualifications of related services personnel and paraprofessionals:

(1) Are consistent with any State-approved or State-recognized certification, licensing, registration, or other comparable requirements that apply to the professional discipline in which those personnel are providing special education or related services; and

(2) Ensure that related services personnel who deliver services in their discipline or profession—

(i) Meet the requirements of any State-approved or State-recognized certification, licensing, registration, or other comparable requirements that apply to the professional discipline in which those personnel are providing special education or related services; and

(ii) Have not had certification or licensure requirements waived on an emergency, temporary, or provisional basis; and

(iii) Allow paraprofessionals and assistants who are appropriately trained and supervised, in accordance with State law, regulation, or written policy, in meeting the requirements of this part to be used to assist in the provision of special education and related services under this part to children with disabilities.

PDE ensures that each person employed as a public school special education teacher in the State who teaches in an elementary school, middle school, or secondary school—

   (i) Has obtained full State certification as a special education teacher (including certification obtained through an alternate route to certification as a special educator, if such alternative route meets minimum requirements described in 34 CFR § 200.56 (a)(2)(ii) as such section was in effect on November 28, 2008), or passed the State special education teacher licensing examination, and holds a license to teach in the State as a special education teacher, except that when used with respect to any teacher teaching in a public charter school, the teacher must meet the certification or licensing requirements, if any, set forth in the State's public charter school law;

   (ii) Has not had special education certification or licensure requirements waived on an emergency, temporary, or provisional basis; and

   (iii) Holds at least a bachelor's degree.

A teacher will be considered to meet the standard qualifications if that teacher is participating in an alternative route to obtain a special education certification and participates in a program where the teacher:

   (A) Receives high quality professional development that is sustained, intensive, and classroom focused in order to have a positive and lasting impact on classroom instruction, before and while teaching;

   (B) Participates in a program of intensive supervision that consists of structured guidance and regular ongoing support for teachers or a teacher mentoring program;

   (C) Assumes functions as a teacher only for a specified period of time not to exceed three years; and

   (D) Demonstrates satisfactory progress toward full certification as prescribed by the State; and

   (E) The State ensures, through its certification and licensure process, that all of the provisions for certification are met.

PDE ensures in part on the State Board of Education's adoption of Chapter 14 and Chapter 711, an instructional paraprofessional is a school employee who works under the direction of a certificated staff member to support and assist in providing instructional programs and services to children with disabilities or eligible young children. Such support and assistance includes one-on-one or group review of material taught by certificated staff, classroom management and implementation of positive behavior support plans. Services may be provided in a special education class, regular education class or other instructional setting as provided in the student's IEP. All instructional paraprofessionals shall meet one of the following qualifications effective July 1, 2010:

   (I) Have completed at least 2 years of postsecondary study.
   (II) Possess an associate degree or higher.
   (III) Meet a rigorous standard of quality as demonstrated through a State or local assessment.

Instructional paraprofessionals, each school year, shall provide evidence of 20 hours of staff development activities related to their assignment.

It is PDE's policy that LEAs in Pennsylvania take measurable steps to recruit, hire, train, and retain qualified personnel to provide special education and related services under IDEA-B to children with disabilities.

It is PDE policy, notwithstanding any other individual right of action that a parent or student may maintain under 34 CFR Part 300, that nothing under 34 CFR Part 300 shall be construed to create a right of action on behalf of an individual student or a class of students for the failure of a LEA employee to be highly qualified, or to prevent a parent from filing a complaint about staff qualifications with PDE as provided for under 34 CFR Part 300.

## § 300.156 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 14.105
22 Pa. Code § 711.3(a)
22 Pa. Code § 711.5

# § 300.157 – Performance goals and indicators.

Regarding the established goals for the performance of children with disabilities required under § 300.157, PDE has in effect established long term goals and annual performance indicators for children with disabilities that ensure that all children with disabilities have available to them FAPE, as stated in § 300.1. The established long-term goals are the same as the State's long-term goals and measurements of interim progress, including PDE's objectives for progress by children with disabilities under § 1111(c)(4)(A)(i) of the ESEA; address graduation rates and dropout rates, as well as other factors identified by PDE, such as suspension and expulsion rates, parent involvement, and transition; are consistent with other goals and academic standards for children established by PDE; and have in effect established performance indicators that PDE uses to assess progress toward achieving goals including measurements of interim progress. PDE annually reports to the Secretary and the public on the progress toward the performance indicators for children with disabilities in the State.

## § 300.157 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
22 Pa. Code § 711.3(a)

# § 300.160 – Participation in assessments.

The annual Pennsylvania System of School Assessment (PSSA) is a standards based, criterion-referenced assessment used to measure a student's attainment of the academic standards while also determining the degree to which school programs enable students to attain proficiency of the standards. The State assessments shall be administered annually and include assessments of the State academic standards in mathematics and reading at grades 3 – 8, and  11; in writing at grades 5, 8 and 11; and in science at grades 4, 8 and 11. It is PDE's policy to ensure that all children with disabilities are included in all general State and district-wide

assessment programs, including assessments described under § 1111 of the ESEA, 20 U.S.C. § 6311, with appropriate accommodations, when necessary and/or alternate assessments, as indicated in each student's IEP.  The Commonwealth annually develops guidelines for the participation of children with disabilities in the general state assessments with accommodations and in the alternate assessment for those children who cannot participate in the general state assessment as determined by each child's Individualized Education Program team.

Individual student scores, provided only to their respective schools, can be used to assist teachers in identifying students who may be in need of additional educational opportunities, and school scores provide information to schools and districts for curriculum and instruction improvement discussions and planning. PDE or other Commonwealth entities are prohibited from collecting individual student test scores, and may only collect aggregate test scores by school and district.

In compliance with § 4.51(b)(4) of the PA School Code the State Board of Education approved specific criteria for advanced, proficient, basic and below basic levels of performance.  Students not achieving at the proficient level in the administration of State assessments in grade 11 shall be provided one additional opportunity in grade 12 to demonstrate a proficient level on State assessments.

The PA State assessment system (PSSA) is designed to serve the following purposes:

> (1) Provide students, parents, educators and citizens with an understanding of student and school performance consistent with the Elementary and Secondary Education Act as amended by the Every Student Succeeds Act of December 10, 2015 (Pub. L. No. 114-95, 129 Stat. 1802).

> (2) Determine the degree to which school programs enable students to attain proficiency of academic standards under 22 Pa. Code § 4.12 (relating to academic standards).

> (3) Provide results to school entities for consideration in the development of strategic plans under 22 Pa. Code § 4.13 (relating to strategic plans).

> (4) Provide information to State policymakers including the General Assembly and the Board on how effective schools are in promoting and demonstrating student proficiency of academic standards.

> (5) Provide information to the general public on school performance.

> (6) Provide results to school entities based upon the aggregate performance of all students, for students with an Individualized Education Program (IEP) and for those without an IEP.

The Secretary has the authority to establish guidelines for the administration of the State assessment system. The Secretary will report each September to the State Board of Education and the General Assembly information and pertinent data relating to the State assessment system. The Secretary will also provide each school entity information and pertinent data for the school entity and its students.

Children with disabilities and children with limited English proficiency shall be included in the State assessment system as required by Federal law, with appropriate accommodations, when necessary. As appropriate, the Commonwealth will develop guidelines for the participation of children with disabilities in alternate assessments for those children who cannot participate in the State assessment as determined by each child's Individualized Education Program team under the Individuals with Disabilities Education Act and this part.

## § 300.160 Authority and/or Responsibility
22 Pa. Code § 14.107
22 Pa. Code § 711.3 (a)(xv)
22 Pa. Code § 4.51

## § 300.162 – Supplementation of State, local, and other Federal funds.

It is PDE's policy that funds paid to a State under Part B of IDEA will be expended in accordance with the following: used to supplement the level of Federal, State, and local funds (including funds that are not under the direct control of the SEA or LEAs) expended for special education and related services provided to children with disabilities under Part B of the Act, and in no case to supplant those Federal, State, and local funds, and must not be commingled with State funds. This requirement is satisfied by the use of separate accounting system that includes an audit trail of all expenditures paid to the state under Part B of the IDEA.

## § 300.162 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.163 – Maintenance of State financial support.

It is PDE's policy to not reduce the amount of State financial support for special education and related services for children with disabilities, or otherwise made available because of the excess costs of educating those children, below the amount of that support for the preceding fiscal year.

## § 300.163 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.164 – Waiver of requirement regarding supplementing and not supplanting with Part B funds.

The waiver of requirement regarding supplementing and not supplanting with Part B funds is not applicable to PA State Education Agency. The PA Secretary of Education under P.S. § 25-2509.8 was given the authority by the State Board of Education to establish guidelines for the application, approval, distribution, and expenditure of state funds for extraordinary special education program expenses, also known as Special Education Contingency Funds. The purpose of the fund is to provide additional state funding for the implementation of the Individualized Education Program (IEP) for a student with significant disabilities.

### § 300.164 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)
P.S. § 25-2509.8

## § 300.165 – Public participation.

PDE's policy and procedures are that prior to the adoption of any policies and procedures needed to comply with IDEA-B (including any amendments to those policies and procedures), the State conducts public hearings, issues adequate notice of the hearings, and provides an opportunity for comment available to the general public, including individuals with disabilities and parents of children with disabilities.

These procedures are conducted consistent with the public participation requirements of 20 U.S.C. § 1232d(b)(7).

### § 300.165 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.166 – Rule of construction.

In complying with §§ 300.162 and 300.163, PDE's policy and procedures do not permit the use of funds paid to it under IDEA-B to satisfy State-law mandated funding obligations to LEAs, including funding based on student attendance or enrollment, or inflation.

### § 300.166 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.167 – State advisory panel.

PDE has established and maintains an advisory panel for the purpose of providing policy guidance with respect to special education and related services for children with disabilities in accordance with the requirements of §§300.167 – 300.169.

### § 300.167 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.168 – Membership.

The State advisory panel consists of members appointed by the Governor, or other official authorized under State law to make these appointments. A majority of the members of the panel includes individuals with disabilities and/or parents of children with disabilities (ages birth through 26). Members are representative of the State population and are involved in, or concerned with the education of children with disabilities.

Representation is consistent with the federal regulations (§ 300.168).   The names and identification of individuals will be made known to the U.S. Department of Education as requested or required within the provisions of the Family Education Rights and Privacy Act.

## § 300.168 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.169 – Duties.

By appointment, the advisory panel is charged to:

(a) Advise PDE of unmet needs within the State in the education of children with disabilities;

(b) Comment publicly on any rules or regulations proposed by the State regarding the education of children with disabilities;

(c) Advise PDE in developing evaluations and reporting on data to the U.S. Department of Education's Secretary under § 618 of IDEA-B;

(d) Advise PDE in developing corrective action plans to address findings identified in Federal monitoring reports under IDEA-B; and

(e) Advise PDE in developing and implementing policies relating to the coordination of services for children with disabilities.

## § 300.169 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.170 – Suspension and expulsion rates.

It is PDE's policy, through its combined enforceable statutory and regulatory provisions, the State Performance Plan, compliance monitoring and corrective action system to annually examine data, including data disaggregated by race and ethnicity, to determine if significant discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities among LEAs in the State.

If discrepancies are occurring with the rate of long-term suspensions and expulsions of children with disabilities, PDE reviews the LEA's policies, procedures, and practices relating to the development and implementation of IEPs, the use of positive behavioral interventions and supports, and procedural safeguards, to ensure that the policies, procedures, and practices comply with federal and state statutes and regulations.

## § 300.170 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.171 – Annual description of use of Part B funds.

It is PDE's policy to annually describe each fiscal year—

(1) How the amounts retained for State administration and State-level activities under §300.704 will be used in order to meet the requirements of IDEA-B; and

(2) How those amounts will be allocated among the activities described in § 300.704 to meet State priorities based on input from LEAs.

## § 300.171 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)

## § 300.172 – Access to instructional materials.

The provisions under § 300.172 are met by State regulations as follows:

The State Board of Education adopts the National Instructional Materials Accessibility Standard (NIMAS) as defined in §674(e)(3)(B) of the Education of Individuals with Disabilities Education Act (20 U.S.C.A. § 1474(e)(3)(B)) and set forth in 71 FR 41084 (July 19, 2006) for the purpose of providing print instructional materials in alternate accessible formats or specialized formats to blind persons or other persons with print disabilities in a timely manner. To ensure the timely provision of high quality, accessible instructional materials to children who are blind or other persons with print disabilities, agencies shall adopt the NIMAS. The NIMAS refers to a standard for source files of print instructional materials created by publishers that may be converted into accessible instructional materials.

Public agencies shall, in a timely manner, provide print instructional materials in specialized, accessible formats (that is, Braille, audio, digital, large-print, and the like) to children who are blind or other persons with print disabilities, have access to their accessible format instructional materials at the same time that students without disabilities have access to instructional materials, and not withhold instructional materials from other students until instructional materials in accessible formats are available. Receipt in a timely manner is defined as receipt of a portion of the instructional materials in alternate accessible or specialized format if the material received covers the chapters that are currently being taught in the student's class. If a child who is blind or other person with a print disability enrolls in school after the start of the school year, the public agency shall take all reasonable steps to ensure that the student has access to accessible format instructional materials within 10 school days from the time it is determined that the child requires printed instructional materials in an alternate accessible or specialized format.

PDE or other agencies may coordinate with the National Instructional Materials Access Center (NIMAC) to facilitate the production of and delivery of accessible materials to children who are blind or other persons with print disabilities. The NIMAC refers to the central repository, established under § 674(e) of the Education of Individuals with Disabilities Education Act, which is responsible for processing, storing and distributing NIMAS files of textbooks and core instructional materials.

### § 300.172 Authority and/or Responsibility
22 Pa. Code § 14.106
22 Pa. Code § 711.3 (a) (xvi)


## § 300.173 – Overidentification and disproportionality.

The Commonwealth of Pennsylvania, through its combined enforceable statutory and regulatory provisions, compliance monitoring and corrective action system, complaint management systems, due process procedural safeguards, technical assistance system, professional certification program, and its data collecting and monitoring system, has an effective system designed to prevent inappropriate overidentification or disproportionate representation by race and ethnicity of children as children with disabilities, including children with disabilities with a particular disability.

### § 300.173 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)


## § 300.174 – Prohibition on mandatory medication.

Enforceable rules have been adopted to prohibit State and LEA personnel from requiring parents to obtain a prescription for substances identified under schedules I, II, III, IV, or V in §202(c) of the Controlled Substances Act (21 U.S.C. § 812(c)) for a child as a condition of attending school, receiving an evaluation or receiving services under 34 CFR Part 300.

Moreover, rules have also been adopted that allow teachers and other school personnel to consult or share classroom-based observations with parents or guardians regarding a student's academic and functional performance, or behavior in the classroom or school, or regarding the need for evaluation for special education or related services under child find.

### § 300.174 Authority and/or Responsibility
22 Pa. Code § 14.102(2)(xx)
22 Pa. Code § 711.3(a)(xviii)


## § 300.175 – SEA as provider of FAPE or direct services.

The duty of the SEA regarding the requirement SEA as provider of FAPE or Direct Services are not applicable to PA State Education Agency. The SEA provides no direct services.

### § 300.175 Authority and/or Responsibility
22 Pa. Code § 14.102(a)(4)